IN RE ESTATE OF MARY C. MAYS, Deceased; JOHN M. BENSON, Curator, Appellant, v. MARGARET B. BROWNE et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted June 7, 1917. Opinion Filed July 3, 1917.

1. WILLS: Bequest to be "Equally Divided" " Between" Children: Division Per Capita. Where a will bequeathed an interest in remainder to a certain person and to the children of certain other persons, "to be equally divided between them," the legatees took *per capita*, and not *per stirpes*—there being nothing in the context indicating a different intention; the word "between" meaning "among" by reason of its association with the words "to be equally divided," the settled legal construction of which, when used in a will, is to cause an equal division of the property bequeathed, *per capita*, and not *per stirpes*, and there being nothing in the context of the will indicating a different intention.

2. ——: Construction: Legatees. A will bequeathed an interest in remainder "to be equally divided between the children of Martha V. Browne, John M. Benson and the four children of William J. Mays," naming them. Martha V. Brown and William J. Mays were stepchildren of testatrix and John M. Benson was the child of a deceased stepchild of testatrix. *Held,* that, in view of the punctuation of the will and the fact that it was the evident intention of testatrix to provide for the children of her shepchildren, the words "the children of" did not apply to John M. Benson, so that he, and not *his* children, was intended to be named as legatees.

3. TRUSTS: Distribution: Parties: Erroneous Construction of Will by Legatee. In a proceeding by a testamentary trustee for an order of distribution among the proper parties, the fact that one of the

beneficiaries was not a party to the proceeding in his own right, but appeared as curator for his child, would not prevent the court, upon it being ascertained that he, and° not his son, was beneficiary, from making a proper order of distribution, since the order is to be made according to the terms of the will, and not as the parties have mistakenly assumed.

4. ———: ———: Refusal of Beneficiary to Receive Share: Duty of Trustee. Where, in a proceeding by a testamentary trustee for on order of distribution, a person adjudged to be beneficiary does not choose to claim and receipt for his share, it is the duty of the trustee to hold such share until the proper claimant appears.

5. ———: Compensation of Trustee. The amount of commission to be allowed a trustee under a will will depend on the amount of the interest earned on the funds, out of which alone a commission can be paid.

Appeal from Marion Circuit Court.—*Hon. William T. Ragland*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ben F. Glahn* for appellant.

(1) In construing the will the court shall have due regard to the true intent and meaning of the testatrix. R. S. 1909, sec. 583. (2) In construing the will, the relation of the testatrix to the beneficiaries, and the surrounding circumstances are to be considered in arriving at the intent of the testatrix. The courts are not confined to the four corners of the will. Grace v. Perry, 197 Mo. 550; Worden v. Perry, 197 Mo. 569; Board of Trustees v. May, 201 Mo. 360; Whitelaw v. Rodney, 212 Mo. 540. (3) In the construction of wills technical rules must yield to the intent and meaning of the testator as gathered from all parts of the instrument and as illustrated by evidence of his situation and surroundings. The court should put itself in the place of the testator. Small v. Field, 102 Mo. 104, 123; Records v. Fields, 155 Mo. 314, 321. (4) Words importing an equal division do not necessarily indicate a division among individuals, as they apply just as readily and as appropriately to classes. Records v. Fields, 155 Mo. 314; Preston v.

Brant, 96 Mo. 552; Raymond v. Hillhouse, 45 Conn. 472; Walker v. Griffin (6 Law Ed. 498), 24 U. S. 375. (5) The rule of construction that would ordinarily require a distribution *per capita* will yield to a very faint glimpse of a different intention. 2 Jarman on Wills, 1st Am. Ed. 111; Raymond v. Hillhouse, 45 Conn. 472. Such in effect is the ruling in Records v. Fields, 155 Mo. 314, 323; 30 Am. & Eng. Ency. Law (2 Ed.), 733. (6) The language used by the testatrix in the case at bar, considering her relationship to the residuary legatees, indicates a division among classes, *per stirpes*, rather than among individuals, *per capita*. Records v. Fields, 155 Mo. 314; Preston v. Brant, 96 Mo. 552; Raymond v. Hillhouse, 45 Conn. 472; Walker v. Griffin, 24 U. S. 375 (6 Law Ed. 498). (7) The relationship of the beneficiaries to the testatrix is not to be disregarded in determining her intentions. Records v. Fields, 155 Mo. 314, 324.

*Hays, Heather & Henwood* for respondents.

(1) By specifically naming John M. Benson and the four children of William J. Mays, the testatrix clearly negatived an intention to divide *per stirpes*. Page on Wills, sec. 552; Kean's Lessee v. Hoffecker, 29 Am. Dec. 345; Almond v. Whitaker, 39 S. E. 395; Johnston v. Knight, 23 S. E. 92; In re Scott's Estate, 163 Pa. St. 165. (2) The word between as used in this will can be given no application or meaning unless it be deemed synonymous with the word among, and as so understood it is distributive in its effect. 2 Underhill on Wills, sec. 562, p. 738; Senger v. Senger's Exr., 81 Va. 697; Almond v. Whitaker, 39 S. E. 395; McIntire v. McIntire, 192 U. S. 116, 48 L. Ed. 369. (3) An intention to divide *per stirpes* is negatived by the fact that the parents of the beneficiaries of the capital fund were living and by the further fact that the parents themselves were given bequests. Maguire v. Moore, 108 Mo. 275; McIntire v. McIntire, 192 U. S. 116, 48 L. Ed. 369; In re Scott's Estate, 163 Pa. St. 165; Page on Wills, sec. 552. (4) No stress can be laid on the fact that the property in question was acquired by the testatrix from her husband. The be-

quests were made under circumstances that exclude all reference to the statutes of distribution. The legatees were not heirs of the testatrix, and neither they nor their parents would have inherited from her had she died intestate. Moreover, there was an added direction for an equal division. Bryant v. Scott, 28 Am. Dec. 591; Purdue v. Starkey's Heirs, 86 S. E. 158; Farmer v. Kimball, 88 Am. Dec. 221-222. (5) At common law and throughout our own country the settled legal construction of the words. "equally to be divided," or equivalent terms, when used in a will, is to cause an equal division of the property *per capita* and not *per stirpes,* whether the devisees be children and grandchildren, brothers or sisters and nieces and nephews, or strangers in blood to the testator. McIntire v. McIntire, 192 U. S. 116, 48 L. Ed. 369; Maguire v. Moore, 108 Mo. 275; Scott's Estate, 163 Pa. St. 165; Post v. Jackson, 39 Atl. 151; Kaufman v. Anderson, 104 S. W. 340; Taylor v. Cribbs, 56 So. 952; Kean's Lessee v. Hoffecker, 29 Am. Dec. 345, 347; Almond v. Whitaker, 39 S. E. 395; Farmer v. Kimball, 88 Am. Dec. 219; Bryant v. Scott, 28 Am. Dec. 590; Justice v. Stringer, 160 Ky. 354; Van Gallow v. Brant, 168 Mich. 642; Purdue v. Starkey's Heirs, 86 S. E. 158; Johnson v. Knight, 23 S. E. 92; Title G. & T. Co., 144 N. Y. S. 890; 2 Underhill on Wills, p. 738; Schouler on Wills, sec. 540; 2 Jarman on Wills, p. 194; Page on Wills, sec. 554; 40 Cyc. 1473-1483; 1490-1496.

REYNOLDS, P. J.—One John Mays, referred to in the abstract as Colonel Mays, had been married three times. Of his first marriage he had one child, a son, William J. Mays, and of his second marriage he had two children, daughters, namely Martha V. Brown and Ellen Benson. Ellen Benson was the wife of Joseph J. Benson and they had a son named John M. Benson, who married and had one child, a son named Mays Benson. Colonel Mays married a third time, his last wife being Mary C. Smith. There was no issue of this marriage and Colonel Mays died some time before the death of his third wife, Mary C. Mays. Mrs. Mary C. Mays was the

stepmother of Martha V. Brown, of Ellen Benson (the mother of John M. Benson) and of William J. Mays.

A considerable fund came to this last wife on the death of her husband, which was of her estate at the time of her death. She died testate. After providing for payment of funeral expenses and debts her will proceeds:

"First, I direct my executors to pay my funeral expenses and all my just debts and liabilities as soon as it can be conveniently done. First, I give and bequeath to Mount Olivet Cemetery four hundred dollars, I do hereby appoint John M. Benson trustee of the said money to be held and used the interest to be applied to keeping the cemetery clean and the fencing in repair the residue of my estate consisting of money alone shall be kept at interest secured by landed estate the interest to be given to my three sisters Susan, Felicia and Margaret Smith to be used by them for their benefit alone during their natural lives at their deaths I will the principle shall be divided equally between the children of Martha V. Brown, John M. Benson and the four children of William J. Mays, Homer, Virginia, John, Violet.

"I give to my stepdaughter Ellen Benson all the things I left in her care to my stepdaughter Martha V. Brown I give her father's portrait done in crayon and my glass globe and the flowers therein.

"I here subscribe my name and affix my seal."

It is said that this will was written by Mrs. Mays herself, although her signature to it is by mark and duly witnessed, and it was duly probated.

The three sisters of the testatrix, Susan, Felicia and Margaret, died after the death of the testatrix and no trustee having been named to take over the fund on their death, Joseph J. Benson, referred to as Judge Benson, was appointed trustee of the fund. He appeared in the circuit court of Marion county and made his report and settlement of the fund in his hands as trustee, reporting that the principal and interest in his hands, up to May 8, 1914, amounted to $5003.69. He claimed credit on this for expenditures and commissions in the sum of $291.37,

leaving a balance for distribution as of date May 8, 1914, of $4713.32. Stating in his application that the three sisters of Mary C. Mays are now dead and that by the terms of the will, that happening, the principal is ordered by the testatrix to be divided equally between the children of Martha V. Brown, John M. Benson and the four children of William J. Mays, naming them, and attaching a copy of the will, the trustee asks the court to make an order for distribution of the fund in accordance with the provisions of the will.

All the beneficiaries but John M. Benson excepted to the allowance of a commission of five per cent. on $5000, claimed by the trustee, averring that it was exorbitant and that the trustee, in previous settlements, had been credited with and paid his full commission, they claiming that the commissions were payable solely out of the income of the fund and in no event chargeable against the principal. These same legatees also filed a motion for distribution, claiming that they and Mays Benson, son and only child of John M. Benson, are entitled in equal shares and proportion to the trust fund, that is to say, an undivided one-eleventh each, and they prayed for an order for distribution of the trust fund accordingly. John M. Benson, as curator of the estate of his minor son, Mays Benson, contesting this, claimed that the fund was to be distributed *per stirpes,* that is to say, one-third to the children or descendants of Martha V. Brown, one-third to Mays Benson, child of John M. Benson, and one-third to the four children named of William J. Mays.

At a trial before the court, the court held that the fund was to be divided *per capita* among the children of Martha V. Brown, naming them, Mays Benson, the son and only child of John M. Benson, and the four children of William J. Mays named, one-eleventh to each, and it adjudged and decreed that the trustee's final settlement be restated so that he be charged with the sum of $5003.-69; that he pay the costs herein taxed, of $5.35, and retain $40 with which to pay estimated taxes for 1914 and retain as his commission "the overplus, if any, over and

above the amount of said capital fund of $4789.44;" and the court thereupon directed the trustee to distribute to each of the parties as above the sum of $435.40, with interest on those sums from the date of the decree at the rate of six per cent. per annum until paid. To this John M. Benson, as curator of the estate of his son Mays Benson, excepting, filed a motion for new trial as well as in arrest of judgment. These being overruled he has duly appealed to this court.

We think that the conclusion arrived at by the learned trial judge, that the legacy here involved was to be distributed *per capita* and not *per stirpes* is correct.

An accepted authority, (Jarman on Wills, vol. 2, sec. 12, chap. 30, *p. 1051 [6 Am. Ed.]) says:

"Where a gift is to the children of several persons, whether it be to the children of A and B, or to the children of A and the children of B, they take *per capita,* not *per stirpes.* The same rule applies, where a devise or bequest is made to a person and the children of another person; or to a person describel as standing in a certain relation to the testator, and the children of another person standing in the same relation, as to 'my son A and the children of my son B;' in which case A takes only a share equal to that of one of the children of B, though it may be conjectured that the testator had a distribution according to the statute in his view. So if the gift be to A and B and their children, or to. a class and their children, every individual coming within the terms of the description, children as well as parents, will take an equal proportion of the fund; that is, the distribution will be made *per capita.*"

The same learned author says, however, that this mode of construction will yield to a very faint glimpse of a different intention in the context, and we may say with reference to the case at bar, that we find nothing in the context of the will which in any way tends to indicate a different intention.

Our Supreme Court, in Records v. Fields, 155 Mo. 314, 55 S. W. 1021, with a will before it providing that the. balance of the testator's property be "equally divided

197 M. A.—36

between the heirs of William and James, deceased," both of them brothers of the testator and deceased at the date of the will, held that the heirs of William take one-half, and the heirs of the other brother, James, one-half; and that the children and grandchildren of William share equally, each taking *per capita*. In a very learned discussion, Judge GANTT, who wrote the opinion, says (l. c. 321), that the crucial test of the case lies in the determination of whether the testator intended to make two classes of these heirs or children. He then says: "What is, first, the ordinary and usual meaning of the words 'between the heirs of James and the heirs of William?' Unquestionably it conveys the thought of two parts, a distribution with reference to two parts, one part to heirs of James, the other part to heirs of William. Not only is this the natural and ordinary meaning of the words, 'equally divided between the heirs of William Fields and the heirs of James Fields,' but this is also the true etymological significance of the word 'between.'" The learned judge concludes that when the word "between" is used it is literally applicable to two objects only, but that it may be and commonly is used for more than two when they are spoken of distributively and that when more than two persons are spoken of collectively or individually the proper word to use is "among," and he concludes that using the word "between," in its proper and correct sense, the phrase "equally divided between the heirs of William Fields and James Fields, deceased," should be construed as equally divided into two parts, one to the heirs of James, one to the heirs of William. "If the other words of the will," says Judge GANTT, "showed that the testator used it as synonymous with 'among,' it may be held to indicate an intention to divide the residue among the children of both *per capita,*" and the conclusion is that the word "between," as used in that will, was not intended to be used in the sense of "among."

In McIntire v. McIntire, 192 U. S. 116, the Supreme Court of the United States, construing the meaning of the word "between," says that that word, "if accurately

used, imports that more than two persons or groups are set against each other (citing, among other authorities, Records v. Fields, supra), and those groups are earmarked and shown to be regarded as groups by naming the parents from which respectively they come. The equality of division is an equality between the groups. . . . . But the court is of opinion that the general rule of construction must prevail according to which, in the case of a gift to the children of several persons described as standing in a certain relation to the testator, the objects of the gift take *per capita* and not *per stirpes.*" The court then refers to what would be the rule under the statute of descents and distributions. We need not consider that statute here, for in no event, in the light of this will, would this fund fall under our statute concerning descents and distributions. None of these parties named as beneficiaries in the will are within the line of descent as pointed out by our statute. If the testatrix had died intestate her estate would have gone in an entirely different direction—to her collaterals, she having no lineal heirs or descendants, and then the statute would have to be considered.

In Scott's Estate (Gwin's Appeal), 163 Pa. St. 165, the third clause of the will in question reads (l. c. 168): "Should my beloved niece Miss Jessie A. Barnes die without issue, then in that case I will and devise the remainder of my estate after her decease without issue as aforesaid, to be divided among my nephews and nieces, to-wit: the legal heirs of Mrs. Lily A. Gwin, the heirs of my deceased brother James A. Scott, and the lawful heirs of my beloved brother John W. Scott, and Anna R. Stuckey, each to take share and share alike." The trial court held that this will provided for a distribution *per stirpes.* The Supreme Court of Pennsylvania, however, did not agree to this and held that whether the technical rules of construction are to be applied to this residuary clause or it is to be given the plain meaning which the words import and its grammatical construction would demand, the result would be the same, Mr. Justice FELL, who delivered the opinion of the court, saying (l. c. 169):

"When there is a testamentary gift to one person, and to the children of another person who stand in the same relation to the testator, the donees take *per capita*. This rule under the English authorities yields to slight indications of a contrary intent; and in Pennsylvania the contrary is inferred where under the intestate laws, which are always resorted to in cases of doubtful interpretation, the distribution would be made *per stirpes,* as in the case of a gift to a son or brother of the testator and to the children or heirs of a deceased son or brother. Where, however, the gift is to persons or classes of persons who stand in the same relation to the testator, the analogy furnished by the intestate laws indicates a division *per capita,* for in such case, under section 14 of the Act of April 8, 1883, and section 1 of the Act of June 30, 1885, persons so standing, 'if there be more than one, shall take in equal shares.' "

Here, the objects of the testatrix's bounty are children of her stepchildren, and not of her blood. As before said, the statute of distribution is of no effect, and, as we understand, these decisions both of the Supreme Court of the United States and of Pennsylvania, as well as of our own  Supreme Court, supra, state the common-law rule prevailing throughout this country, to the effect that the settled legal construction of the words "equally to be divided," or equivalent terms, when used in a will are to cause an equal division of the property *per capita* and not *per stirpes,* whether the devisees be children and grandchildren, brothers or sisters, or nieces and nephews, or. strangers in blood to the testator.

Our conclusion, therefore, is that the word "between," as used in this will, means "among," and it follows that the learned trial court was right in holding that this will provides for a distribution *per capita* and not *per stirpes* between the parties.

But that decision cannot stand in awarding a share to Mays Benson, only child of John M. Benson. As we interpret this will, the beneficiary included in it is John M. Benson himself and not his child or children. Hence his only child, Mays Benson, now has no interest. The

word "children," as designating those of Martha V. Brown, is not intended to apply to the children of John M. Benson. Grammatically construed, it does not so read. Following, as the will reads and is punctuated, the name of Martha V. Brown, is a comma and then John M. Benson is named. We hold that the word "children" does not refer to the children of John M. Benson. That construction is in harmony with the whole will. The testatrix was providing for the children of her stepchildren, and John M. Benson is the only son of her stepdaughter, Mrs. Ellen Benson. If John M. Benson was dead his child or children would take as his heirs. But he is alive. That being so, his son, Mays Benson, who appears to be now his only child, does not now take; is not included within this bequest. The fact that John M. Benson is not a party to this proceeding in his own right, is not now material. This is a proceeding instituted by the trustee for an order of distribution among the proper parties and that order is to be made according to the terms of the will, and not as the parties may have mistakenly assumed. One share should be adjudged to him; if he does not choose to claim it and receipt for it, that is his matter. The trustee would then simply hold that share until the proper claimant appears. What we say now is, that Mays Benson, the son and now the only child of John M. Benson, his father alive, is not a party to whom a distributive share of this estate is to be given.

The decree of the circuit court names a specific amount as to be distributed to the several parties. As this is based on the amount of the fund at the time of the decree and as this amount has increased by the accumulation of interest, those amounts are necessarily incorrect. The allowance which that court made to the trustee for expenses and expenditures and its action in holding that the distribution was to be made *per capita* and not *per stirpes,* is affirmed. On what amount the commission is to be allowed will depend on the amount of the interest earned on the fund—out of which alone a commission can be paid. The judgment of the circuit court is according-

ly reversed and the cause remanded with directions to that court to proceed in accordance with this opinion. *Allen* and *Becker, JJ.,* concur.

