## CLAUDE KILPATRICK et al., Trustees, v. DOUGLAS W. ROBERT et al., Executors of EDWARD S. ROBERT, Interveners, Appellants.

Division One, June 2, 1919.

1. **RES ADJUDICATA: Must Be Pleaded.** *Res adjudicata* is an affirmative defense and should be pleaded; and unless the petition upon its face shows that the cause of action is in some way barred, or there is a plea of *res adjudicata*, the question of former adjudication is not for decision. An answer consisting of a general denial to a petition which upon its face does not show former adjudication is not sufficient to raise the question.

2. **MOTION FOR NEW TRIAL: General Assignments.** The motion for a new trial set out in the opinion is *held* sufficient in all its general assignments.

3. **TRUSTEES: One Compensation.** But one compensation can be allowed for the management of a trust estate, whether there be one or more than one trustee. If there be more than one and the work and responsibility have been divided, the compensation must be likewise divided.

4. **————: Amount of Compensation.** In the absence of a statute fixing the compensation of trustees (as is the case in Missouri), the compensation should be a reasonable one, due regard being had for the services rendered to the estate; for the kind and character of the services are potent factors. The question is not one of percentages, but the worth of the trustee's services rendered the estate.

5. **————: ————: Five Per Cent of Gross Income.** Where in the management of a very large estate, consisting largely of first-class interest-bearing securities and requiring little attention, the trustees at the end of each of the eighteen years of their stewardship appropriated at the end of each year five per cent of the gross income for the year, and distributed the balance, after paying all expenses, some of which were compensation to book-keepers and agents who collected rents, to the beneficiaries, and they could have appropriated more if they had considered their services worth more, it will not be held that the executors of one of them, who died four years before the trust terminated, can, at the time of final distribution, go back and recover a larger compensation for the nine years that he served as trustee, the trustees having acted throughout on the theory that the annual payments were a fair and just compensation for their services.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E.. Cave,* Judge.

AFFIRMED.

*Dauglas V. Robert* for appellants; *P. Taylor Bryan,* of counsel.

(1) Trustees are entitled to a reasonable compensation for their services. Kent v. Foster, 22 Mo. App. 649; Maginn v. Green, 67 Mo. App. 620; Berry v. Stigall, 125 Mo. App. 268; Donaldson v. Allen, 182 Mo. 650; Barney v. Saunders, 16 How. 541; 2 Perry on Trusts, sec. 918. And it is payable out of the *corpus* as well as the income. Ames v. Scudder, 11 Mo. App. 168, 83 Mo. 189; Re Berkeley's Trust, 8 Ont. Pr. Rep. 193; In re Williams, 4 Ont. Law Rep. 501. (2) The estates of trustees who die before the termination of the trust are entitled to a reasonable allowance out of the *corpus* of the trust estate as compensation for the services performed by the deceased trustee. Widener v. Fay, Admr., 51 Md. 273; Young v. Hughes, 39 Ore. 586; Whitehead v. Draper, 132 App. Div. (N. Y.) 799; Bentley v. Shreve, 2 Md. Ch. 215; In re Gill, 47 N. Y. Supp. 707; In re Allen, 96 N. Y. 327; Bosler's Estate, 161 Pa. St. 457; In re Leavitt, 97 Pac. (Cal.) 916; In re De Peyster, 4 Sandf. Ch. 511; In re Phillips, 4 Demarest, 299; In re Welscher Estate, 3 Walker, 241; 2 Woerner, Admr., sec. 531. (3) The proper time to claim commission from the *corpus* was when the estate was in course of distribution. Philips v. Burton, 107 Ky. 88; Wister's Appeal, 86 Pa. St. 160; Albro v. Robinson, 93 Ky. 195; Penn-Gaskells Estate, 208 Pa. 342; Harland's Accounts, 5 Rawle, 323. (4) In determining the amount of the compensation of trustees, the service, responsibility, labor, diligence, skill and amount of the estate are considered. Harland's Accounts, 5 Rawle, 323; Re Harrison's Estate, 217 Pa. 207;

Gibson's Case, 1 Bland, 138; In re Moffatt, 24 Hun, 325. (5) The professional character of the trustee is also taken into consideration. Lowries' Appeal, 1 Grant Cas. 373; Perkin's Appeal, 109 Pa. 314. (6) The one compensation should be divided amoung all of the trustees. Smart v. Fisher, 7 Mo. 580; 2 Woerner, Admr., sec. 531.

*Jesse A. McDonald, Nagel & Kirby* and *James A. Seddon* for respondent.

(1) Full and liberal compensation has been paid to the trustees for all services rendered, as is clearly shown by the record facts, and Mr. Robert's estate is not further entitled. Condict v. Flower, 47 Mo. App. 514; Gamble v. Gibson, 59 Mo. 585; 2 Perry on Trustees (6 Ed.), p. 1493; Parker v. Hill, 185 Mass. 14; Re Harrison's Estate, 217 Pa. St. 207; Grimball v. Cruse, 70 Ala. 534; Urann v. Coates, 117 Mass. 41; Tidball's Estate, 29 Pa. Super. Ct. 363; Dunne v. Coke, 197 Ill. App. 422; Berry v. Stigall, 125 Mo. App. 264; Beck v. Kinealy, 89 Mo. App. 418; Lukens' Appeal, 47 Pa. St. 356; Abel v. Brady, 79 Md. 94; Wilder v. Hast, 29 Ky. Law Rep. 1181; Estate of Charles Dorrance, 186 Pa. St. 64. (2) The trustees, at the end of each year, rendered to the beneficiaries an account of the income collected in the year, deducted five per cent thereof for "trustees' commissions" for the year, and paid over the balance to the beneficiaries. Such payments were not merely for "handling," viz.. collecting and disbursing the income of the year, but for account of all their services of the year rendered to the estate, and were received as full compensation for such services. Perry on Trusts (6 Ed.), sec. 919; In re Harrison's Estate, 217 Pa. St. 207; In re Gibson, 1 Bland Chanc. 138; In re Perkins Appeal, 109 Pa. St. 314; Wagstaff v. Lowerre, 23 Barb. 209; In re Rothschild, 47 Pa. Sup. 234; In re Hemphill, 18 Pa. St. 303; Dixon v. Homer, 2 Metc. 420; Abell v. Brady, 79 Md. 94; Wilder v. Hast, 96 S. W. (Ky.) 1106; In re Spangler Estate, 21 Pa. St. 335; Parker v. Ames, 121

Mass 220; In re Schaefer, 165 N. Y. S. 19. (3) If there was any question whether the annual payments of five per cent of the income were not intended to be in full of all the services of the trustees, and whether Robert's estate was entitled "to some additional compensation," the claim was due at his death, when his services as trustee terminated, and could have been included in the suit of Kilpatrick v. Fowler, to Feb. Term 1912, and by the decree in that case the question has become *res adjudicata.* Kopp v. Blessing, 121 Mo. 391; Greenabaum v. Elliott, 60 Mo. 25; Epright v. Kaufman, 35 Mo. App. 455; Mason v. Summers, 24 Mo. App. 174; Anderson v. Sands, 40 D. C. App. 447; Hord v. Bradbury, 156 Ind. 30. (4) The motion for a new trial is so general in its assignments that there is nothing before this court for its decision. Polski v. St. Louis, 264 Mo. 459; Disinfecting Co. v. Bates, 273 Mo. 300; Kansas v. Bush, 208 S. W. 625.

GRAVES, J.—Leaving out of consideration the acrimony which has crept into some of the briefs on one side of this case, a comparatively short statement will suffice to present the issue involved herein. The facts are few and simple. The appellants are the executors of the estate of Edward S. Robert, deceased. The respondents are the trustees and beneficiaries under the will of John E. Liggett, deceased.

John E. Liggett died testate November 23, 1897, leaving a very large estate in the City of St. Louis. His will was probated November 29, 1897, and by the terms of the will Claude. Kilpatrick, John Fowler and Mitchell Scott were made trustees of the estate. These trustees were the husbands of John E. Liggett's three daughters. These trustees served until December 8, 1902, at which time Mitchell Scott died. Early in February the two remaining trustees (as contemplated by the will) brought a proceeding in the circuit court of the City of St. Louis, asking the appointment of a successor trustee to Mitchell Scott, deceased. As a result Edward S. Robert was

appointed as successor trustee on February 19, 1903, and continued to serve until December 12, 1911, on which date the said Edward S. Robert died.

Following the death of Mr. Robert, the surviving trustees, Kilpatrick and Fowler, brought another proceeding in the circuit court of the city, for the appointment of a successor to Mr. Robert, and this resulted in the appointment of Charles Wiggins, who was then the husband of Ella L. Scott, the former wife of the first trustee, Mitchell Scott.

In this last proceeding all the beneficaries of the trust created by the will were made parties defendant, as also were the executors of the estate of Edward S. Robert, deceased, being the same executors who are interveners in the instant case.

To the petition were three exhibits, viz., Exhibit A, the will; Exhibit B, a statement of the assets of the estate; Exhibit C, a statement of receipts and expenditures for the year past. The petition concluded with this prayer:

"Where plaintiffs pray the court to appoint a successor to the said Edward S. Robert; that it fix the amount of bond to be given by said successor and that the court approve the accounts of the property in the possession of said trustees on the twelfth day of December, 1911, and grant such other and further relief as to the court may seem just."

In Exhibit C, supra, appear, among many items of credits, the following: "Dec. 30, 1911, By C. Kilpatrick, Trustees' Commission 1911, $5,434.66;" "Dec. 30, 1911, By E. S. Robert, Trustees' Commission 1911, $5,434.67. "January 4, 1912, By John Fowler, Trustees' Commission 1911, $5,434.67."

Under the testimony in the case the trustees at the end of each year took out of the gross income of the estate for the year five per cent thereof and divided this equally among the trustees. This averaged Mr. Robert, during his incumbency about $5,600 annually. The estate was near a $6,000,000 estate. Under the terms of the

will the trust created thereby terminated in April, 1916. From the beginning of the trust to the end thereof the five per cent of the gross income was taken out of the annual income each year, by the trustees for their services.

For nine years Mr. Robert was a party to this act. The trust ran for 18 years, but this five per cent of the income was taken before and after the incumbency of Mr. Robert, as well as during his incumbency.

In this present action the executors of Mr. Robert ask some $57,000 additional compensation for him, to be allowed out of the estate funds. The income of the estate (exclusive of the trustees' commissions aforesaid, and the expenses of the trust) was divided semi-annually between such of the beneficiaries as were entitled to immediate distribution. The present claim for the estate of Mr. Robert was by intervening petition, the trustees by their petition having sought to wind up their trust by having an approval of their stewardship and an order of distribution. Answers to the intervening petition were filed, and the issues thus raised are the matters for determination here.

I.   Some preliminary questions appear, and must be disposed of before we reach the merits of the controversy. First, it is urged that the matter has been previously adjudicated. That is to say, *res adjudicata* is urged by repondents here. This Adjudicata. is bottomed upon the item in the settlement in 1912 (set out in our statement) wherein it appears that Mr. Robert (after his death) was charged with $5,434.67 as his commission for 1911, his death occurring December 12, 1911. We need not go into details on this matter. Suffice it to say that *res adjudicata* is an affirmative defense and should be pleaded. There is no such plea in this record. Here the claim is made by an intervening petition. The answers to this intervening petition are simple general denials. The intervening petition upon its face does not show former adjudication, and the answers

make no such defense. The question is therefore not in the record.

It is true that it has been ruled that where a petition upon its face shows former adjudication, the question being in the petition makes it demurrable on the ground that the petition fails to state an unadjudicated cause of action. [Givens v. Thompson, 110 Mo. l. c. 443.] But such is not the status of this case. The applicable rule is thus well stated in Beattie Mfg. Co. v. Gerardi, 166 Mo. l. c. 156, whereat it is said:

*"Res adjudicata* is an affirmative defense, and like all other defenses of that character must be pleaded, unless the petition upon its face, shows that the cause of action sued upon is in some way barred, which cannot be said of the petition in this case. This question was passed upon by this court in the case of Kelly v. Hurt, 61 Mo. 463, in which it was said: 'The point that the validity of Hurt's purchase has been heretofore settled by this court in favor of the defendant in the case of Hurt v. Kelly, 43 Mo. 238, can not be considered by us now. There is no plea in this case that the subject-matter of this suit has become *res adjudicata,* and whether that suit is for any reason a bar to the present one, can not be determined on this demurrer.' [Mo. Pac. Ry. Co. v. Levy, 17 Mo. App. 501.]

"It may be that the former judgment is a bar to a recovery in this action, but that question should be raised by a plea of *res adjudicata,* and supported by proof that the matters adjudicated in the former suit were the same that are now presented for determination in the suit at bar. It follows that the demurrer could not properly have been sustained upon this ground."

See also Trimble v. Railroad, 199 Mo. l. c. 55, 56; Nelson v. Jones, 245 Mo. l. c. 590.

Under our rule, which is sound and well supported, the question of *res adjudicata* is not in the case.

II.   A second preliminary question lies in a suggestion of counsel for respondents, wherein they say:
"The motion for a new trial is so general in its assignments that there is nothing before this court for its decision."

**Motion for New Trial.**

To present the matter clearly we should give the motion. We thought the matter fully settled, but some recent cases from the courts of appeals would indicate that our recent ruling has not been fully understood, even by some of our own brothers. The motion in this reads:

"1.   Because the court erred in admitting illegal and improper evidence offered by plaintiffs and defendants against interveners' objection.

"2.   Because the court erred in excluding competent and legal evidence offered by interveners.

"3.   Because the finding and decree of the court is against the law and the evidence.

"4.   Because the finding and the decree of the court is against the weight of the evidence.

"5.   Because the finding and decree of the court is not supported by the evidence and was for plaintiffs and defendants and not for the interveners.

"6.   Because the court erred in applying the law to the facts in the case.

"7.   Because the court misconstrued the facts and erroneously misstated them.

"8.   Because the court erred in dismissing interveners' petition.

"9.   Because the court erred in not finding interveners entitled to an equitable proportion of a fee to be allowed out of the corpus of the fund in the hands of the trustees."

Under our ruling in Wampler v. Railroad, 269 Mo. l. c. 476 et seq., this motion is sufficient, under our practice, in all of its several assignments. The case law is fully reviewed in the Wampler case by our Court in Banc, and upon the question here involved, six judges concur. BOND, and REVELLE, JJ., concur in

separate opinion, but upon the sufficiency of the motion (one in general terms) in the Wampler case, they agree. As the Wampler opinion cites and reviews all, or at least many, of our cases upon the subject, further citation is not required here. This contention of the respondents must be overruled.

III. This brings us to the merits of this case. The estate was a large one, but one when first placed in the hands of the trustees largely composed of first-class interest-bearing securities, and required but little attention except to clip and collect coupons, and distribute the income to the benefici-aries. The life of the trust was eighteen years, and Mr. Robert served as trustee about half that time. There were no vexatious questions or conditions in the entire course of the administration of the estate. Reinvestments were to be made, and sales of securities, but in instances brokers were paid fees for such work. Shortly after Mr. Robert became a trustee large investments were made in several pieces of first class real estate in St. Louis, all of which were on or soon placed upon a good fixed and permanent rental basis, and a bookkeeper looked after many of the details of collecting and keeping the accounts of these rents. This man was paid out of the estate funds. So all-told the administration of the estate had no intricate or mean conditions.

*Trustee's Compensation.*

Attempt is made to show by the figures that the corpus of the estate was increased in value by some $600,000, during the term of Mr. Robert, but the showing in this regard is by no means satisfactory, or, to say the least, far from conclusive. The claim of the Robert's estate of $57,000, as his one-third of an additional compensation, would when applied to other trustees, and during the whole term of eighteen years, absorb more than one-half of the whole alleged increase.

It seems to be conceded that but one compensation can be allowed, whether there be one or more than one trustee. In other words that the compensation is a single compensation for the management of the trust. If there be more than one trustee the work and responsibility have been divided, and the compensation is divided. Not only so, but in the absence of a statute fixing compensation of trustees (as is the case in Missouri) the compensation should be a reasonable one, having due regard for the services rendered to the estate by the trustee or trustees. [2 Perry on Trusts (6 Ed.), sec. 918; Barney v. Saunders, 16 Howard, 541.] So that the kind and character of services is one of the potent factors in fixing the compensation.

In the case of Re Harrison's Estate, 217 Pa. St. l. c. 209, it is said: "The compensation of a trustee, of any character, may be arrived at, as a matter of convenience, by the way of a percentage on the amount of receipts and disbursements. But after all, on all authority, it is a question, not of percentage, but of compensation. When the court has fairly responded to the interrogatory how much has the trustee earned? it has discharged its whole duty in the premises. It, therefore, comes to nothing to say the percentage is large or the percentage is small as compared with the estate, if the executor has received neither less nor more than what his services are worth." In the same case at page 210 it is said: "The safer rule, therefore, to be adopted and followed in remunerating a trustee for his services is the simple one that he be compensated for the services performed and the liability incurred. It should be understood by trust companies as well as individuals that the position of a trustee is not to be sought nor granted *for the purpose of profit. Fair compensation* to be ascertained under the rule suggested, is all that a trustee has a right to demand, and all that any court should award." (The italics are ours.)

In 2 Perry on Trusts (6 Ed.), sec. 919, it is said: "The usual practice in relation to trusts is to allow trustees a commission upon the amount of the yearly income received and paid out by them. This commission varies according to the rules in the various states."

It is clear in this case that the trustees of this estate acted upon this usual rule stated by Mr. Perry. From the beginning to the end of the life of this trust (eighteen years) the trustees took out five per cent of the gross income of this estate and appropriated it to their own use. Out of the remainder they paid the other expenses of the trust, and the net proceeds they paid over to the beneficiaries. For nine years Mr. Robert was a party to this proceeding. I have no doubt that Mr. Robert, as well as the other trustees, looked upon these annual payments to themselves as a fair and just compensation for the services they were rendering the estate. If they thought their services were worth more, the income was in their hands, and they would have taken out more. There is nothing in the record to suggest the contrary. There were ample funds in the income with which to pay them each year for all their time, trouble and liability in the execution of this trust. They seem to have decided upon annual payments for their services, and fixed their own estimate of the value of those services. These facts no doubt went far toward influencing the chancellor, *nisi*, in the determination of the intervening petition and the claim presented therein. The whole course of conduct indicates that these trustees, including Mr. Robert, took what they thought to be a reasonable compensation for their services. And considering what they had to do, we think it was a reasonable compensation. So viewing the case, the judgment *nisi* should be and is affirmed. All concur.