## NORFLEET H. RAND AND ELOISE S. RAND, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66462.    Filed December 21, 1959.

*Charles B. McInnis, Esq.*, for the petitioners.
*Robert A. Roberts, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the calendar year 1953 in the amount of $28,828.68. The sole issue is whether the amount of $35,431.49, representing fees paid to trustees is to be taken into account in determining the amount of the income of the trust currently distributable to petitioner as the sole beneficiary of the trust.

Most of the facts were stipulated, and the stipulation is incorporated herein by this reference.

Petitioners are husband and wife, residing in St. Louis, Missouri. The petitioner Eloise S. Rand is a petitioner herein only by reason of having filed with her husband a joint Federal income tax return for the year 1953 with the district director of internal revenue, St. Louis, Missouri. The petitioner Norfleet H. Rand will hereinafter be referred to as the petitioner.

The return for 1953 was prepared on the cash receipts and disbursements method of accounting. The books and records of the trust, hereinafter described, were also kept, and its returns filed, on the cash receipts and disbursements method of accounting.

On October 29, 1926, Frank C. Rand, the father of the petitioner, hereinafter referred to as the grantor, created an irrevocable trust for the benefit of the petitioner. In the indenture of trust the grantor conveyed to himself, as trustee, certain securities consisting of 7,500 shares of common stock of International Shoe Company, 500 shares of International Shoe Company preferred stock, and 333 shares of stock of Piggly Wiggly, subject to indebtedness of $187,-153.33. The indenture reads in part as follows:

KNOW ALL MEN BY THESE PRESENTS, that, I, FRANK C. RAND, have this day assigned and caused to be transferred into my name as trustee, certain securities and properties set forth in the schedule hereto attached, subject to the indebtedness on said schedule shown, and do declare that I, as such trustee, and my successor or successors in trust, shall stand possessed of the said securities and properties and/or other property which may hereafter come into possession under this trust,

HOWEVER FOR THE FOLLOWING TRUSTS AND PURPOSES, TO-WIT:

A. To hold, manage, and improve said property, with full authority to such trustee to change the investment of the same or any part thereof and to invest or re-invest the proceeds from time to time, with full power to accumulate, invest, change, and re-invest the surplus of any income, dividends and interest from said securities and property, nevertheless for the benefit of my son, NORFLEET H. RAND, and, if he die during the period of this trust, for the benefit of such persons as he may appoint in his will, or, if he dies intestate during the period of this trust, then for the benefit of such persons as may be entitled thereto under the intestacy laws of the State of Missouri.

B. For the period of this trust, the trustee hereunder shall accumulate or invest any income or interest, such income or interest to be added to and become a part of the principal of the trust fund or property; or the said trustee may in his discretion use such income or interest to reduce the indebtedness against said trust fund or property.

However, said trustee may in his sole discretion, at any time during the period of the trust, pay to said Norfleet H. Rand any part of said income or interest, or he may, if he deems it advisable, pay over and deliver to said

Norfleet H. Rand, a part or the whole of the accumulated principal of the trust fund or property then in his possession.

C. On December 8, 1943, if said Norfleet H. Rand is then living, said trustee shall pay over and deliver to him free of this trust, one-half of the principal of the accumulated fund or properties then in his possession, the exact values of said properties to be established by said trustee in his sole discretion, the other one-half to be held by the said trustee for accumulation, investment, etc., under the provisions of this trust declaration.

D. On December 8th, 1953, if said Norfleet H. Rand is then living, said trustee shall pay over and deliver to him free from this trust, the rest, residue and remainder of the accumulated principal of the fund or property then in his possession.

E. If said Norfleet H. Rand shall die before the trustee shall have paid over and delivered to him all of the accumulated principal of the trust fund or property, the part of said accumulated principal, which then remains in the possession of the trustee shall be by him distributed or handled in accord with the last will and testament of said Norfleet H. Rand, or, if he shall die without a will, then in accordance with the laws of intestacy of the State of Missouri, provided, however, that the trustee shall continue to hold and manage and this trust shall continue as to the share of any minor or minors until such minor or minors shall attain the age of twenty-one years; and the trustee may in his sole discretion make advancement of income or of principal to or for such minor or minors.

F. This trust shall cease and determine whenever the trustee shall have paid over or delivered all of the trust property to the beneficiaries as hereinbefore provided.

    *       *       *       *       *       *       *

I. The trustees shall have the following powers in addition to those hereinbefore conferred or those ordinarily possessed by trustees:

    *       *       *       *       *       *       *

4. The power to join in any plan of reorganization, merger, consolidation, lease or other reshaping of the financial structure of any corporation of which this trust estate may hold bonds, stocks or other securities.

On or about May 7, 1942, the grantor filed a petition in equity in the Circuit Court of St. Louis, to resign as trustee and for the appointment of successor trustees. The petitioner herein appeared by his attorney, filed an answer to the petition, and joined in the prayer for the relief sought. On May 15, 1942, the court appointed the Mercantile-Commerce Bank & Trust Co., of St. Louis, Missouri (hereinafter referred to as the bank), Richard O. Rumer, a lawyer, and petitioner as successor trustees of the trust.

The principal of the trust at the time of the appointment of the successor trustees consisted of 23,700 shares of common stock of the International Shoe Company, which were part of the original principal of the trust (there having been a previous stock split and partial distribution). This stock was held by the trustees as principal until the trust was terminated and distributed to the beneficiary as will appear hereinafter.

The Rand family and trusts created by them had substantial stockholdings in the International Shoe Company, their maximum holdings at any time being approximately 225,000 shares. During the period the successor trustees were in office the International Shoe Company had outstanding stock of not less than 3,350,000 shares, of which more than 2,000,000 shares were voted at the annual meetings. The trustees gave their proxies to the management of the corporation. There was no competition between the Rand family and others for control of the corporation. From two to four members of the Rand family participated in the management of the company during the existence of the trust. The petitioner was elected to the board of directors of International Shoe Company in 1951 or 1952. Rumer was elected to the board of directors of that company in 1950.

The bank, Rumer, and the petitioner accepted their appointments on June 2, 1942, and served as successor trustees of the trust from the date of their acceptance to December 8, 1953, the date on which the trust was terminated. These trustees set up three separate accounts for the assets of the trust. The first account was designated as the "Principal Account." For the duration of the trust the entire principal account was composed only of the 23,700 shares of stock of International Shoe Company.

The second account was designated as the "Income Account." All income received by the trust was deposited in the income account and the compensation of the trustees was paid from that account.

The third account was designated as the "Accumulated Principal Account." At the time the successor trustees took over the administration of the trust there was no balance in the accumulated principal account.

In June or July 1942, the successor trustees decided not to distribute current income of the trust to the petitioner during their term as successor trustees but, rather, to augment the principal of the trust as much as possible. This plan to augment the principal was acquiesced in by petitioner in 1942, and was not further discussed by the trustees. Normally, whenever income in excess of probable requirements of the income account were on hand, the excess income was transferred to the accumulated principal account by appropriate debits and credits. The last such transfer took place on April 6, 1953. The only distribution of income that was ever made by the trustees to petitioner was on January 18, 1954, as part of the final distribution of the trust. The cash which was transferred to the accumulated principal account was invested as soon as decisions as to investments could be made. Sometimes the bank made the decision on the investments, but most investment decisions were made at con-

ferences of the trustees held at least twice a year. The petitioner had a voice in the purchase of securities held by the trustees. The investments were largely industrial securities listed on the New York Stock Exchange, but some short-term Government securities and municipal and other income-producing bonds were purchased from time to time. The last investment made by the trust was on March 27, 1953.

The assets of the trust became distributable to petitioner on December 8, 1953. The 23,700 shares of common stock of International Shoe Company, constituting the only asset in the principal account, were delivered to him on December 31, 1953. The securities in the accumulated principal account were distributed to petitioner on December 31, 1953, and February 10, 1954. The balance, $23,226.15, of the income account, after the payment of the trustees' compensation, was paid over to the petitioner on January 18, 1954.

The indenture creating the trust contains no reference to trustees' compensation. The court which appointed the three successor trustees made no provision for their compensation and no court ever passed upon or approved the fees actually paid. On June 6, 1942, Joseph W. White, vice president and trust officer of the bank, forwarded a letter to Rumer and the petitioner's attorney, stating:

I think it advisable, upon entering the administration of the six trusts created by Mr. Frank C. Rand, that there be an understanding among the successor trustees with respect to the allocation of the commission to be charged.

Our fee for acting as co-trustee of these trusts will be three per cent. of the gross income, as and when collected, and three per cent. of the value of the principal of the respective trusts, as and when distributed. Any income which may be accumulated and added to principal shall be excluded from principal in computing commission thereon. The foregoing charge is to cover all services rendered by us as co-trustee.

The individual co-trustees of the six trusts, if they claim compensation, would be entitled to receive a commission of one per cent. on income and one per cent. on principal, on the same basis as that outlined above for our compensation.

The basis for computing the trustees' fees, as outlined in the above-mentioned letter, was communicated to the petitioner, who was at that time in the Navy, stationed at Great Lakes, Illinois, and on July 11, 1942, the petitioner gave his approval. The grantor took no part in the decision relating to the fee agreement, but he was advised of the agreement. At a date not of record, the petitioner waived his right to compensation as a successor trustee.

During the period that the trust was being administered by the successor trustees, fees were currently paid to the bank, computed at the rate of 3 per cent on income collected, and to Rumer, computed at the rate of 1 per cent on income collected. Such fees were paid out of and charged to the income account. Rumer received,

over the life of the trust, aggregate fees of approximately $7,000 measured by the income, all of which was charged to the income account of the trust. Approximately $21,000 was paid to the bank as trustee and charged to the income account over the same period of time. No compensation was paid at any time to the trustees, measured by the value of the securities in the accumulated principal account, since fees had already been paid to them measured by the trust income which had been invested in such securities.

On December 30, 1953, the trustees paid to Rumer the sum of $8,857.87 as his trustee compensation, being 1 per cent of $885,787.50, the sum used as the value of the 23,700 shares of the International Shoe Company stock at the date of distribution. On December 31, 1953, the trustees paid to the bank the sum of $26,573.62 as its compensation, which represented 3 per cent of $885,787.50. These amounts were paid out of the income received during the year 1953 and were charged to the income account on the books and records of the trust.

At no time were any fees, commissions, or compensation of the trustees charged to the principal account or the accumulated principal account.

The fiduciary income tax return filed by the trust for the taxable year 1953 disclosed total income, total deductions, income distributable to beneficiary, and net income as follows:

| Total income | Total deductions | Income distributable to beneficiary | Net income |
|---|---|---|---|
| $69,467.76 | $41,127.83 | $28,339.93 | 0 |

The total deductions of $41,127.83 consisted of the following:

| | |
|---|---|
| Intangible tax and Missouri income tax | $1,587.76 |
| Miscellaneous expenses | 1,323.46 |
| Trustees' commissions, computed on income of 1953 | 2,785.12 |
| Trustees' commissions, computed on value of principal | 35,431.49 |
| Total | 41,127.83 |

The petitioners reported in their joint returns for the calendar year 1953 the sum of $28,339.93 as distributable income of the trust taxable to them.

In the deficiency notice the respondent increased the amount of petitioner's distributable income of the trust for the year 1953 by the amount of $35,431.49, representing the compensation of $8,857.87 paid to Rumer and $26,573.62 paid to the bank on December 30, and December 31, 1953, respectively, on the ground that such amounts were chargeable to the corpus of the trust and were incorrectly and improperly deducted in computing the petitioner's distributable income from the trust.

OPINION.

The trust terminated on December 8, 1953, and the petitioner became entitled to a distribution of all property which the trust held. Under such circumstances, the income of the trust for the year of termination is considered "income which is to be distributed currently" by the fiduciary, which is deductible by the trust and taxable to the beneficiary pursuant to section 162(b) of the Internal Revenue Code of 1939.[1] *Hazel Kirk Carlisle*, 8 T.C. 563, affd. (C.A. 6) 165 F. 2d 645.

In *Edith M. Bryant*, 14 T.C. 127, affd. (C.A. 4) 185 F. 2d 517, we held that the amount of the income of the trust which is deductible by the trust and taxable to the beneficiary depends upon the amount which the trustee has a right to pay and the beneficiary has the right to receive—not upon what in fact was done—citing *Freuler* v. *Helvering*, 291 U.S. 35, and that this in turn depends upon State law. In that case we held that under New York law certain trustees' commissions which were a charge against corpus of the trust were not deductible in computing the distributable income taxable to the beneficiary, even though they were actually paid out of income of the trust.[2]

Here the question is whether under the facts presented, and under the law of Missouri, the trustees' fees of $35,431.49, being computed at 4 per cent of the value of the original principal of the trust, which were actually paid out of the income of the trust for the year of termination, serve to reduce the distributable income which is taxable to the beneficiary. The respondent held not, contending that these fees were a charge against only corpus of the trust. The petitioner,

---

[1] Section 162 of the Internal Revenue Code of 1939, as amended by section 111(b) of the Revenue Act of 1942, provides:

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

[2] Here, as in *Edith M. Bryant*, 14 T.C. 127, affd. (C.A. 4) 185 F. 2d 517, we have before us only the tax liability of the beneficiary and not that of the trust. Whether, under the rationale of *Bingham's Trust* v. *Commissioner*, 325 U.S. 365, the trust, in computing its net income, is entitled to a deduction of the trustees' fees, is not determinative of the question whether the beneficiary is entitled to have the income of the trust reduced by all trustees' fees in determining the distributable income of the trust taxable to such beneficiary.

on the other hand, contends that under Missouri law these fees were properly a charge against income, and that they were properly paid out of, and served to reduce, income which is distributable and taxable to the petitioner.

We have examined all the authorities cited with respect to the Missouri law upon this subject, as well as others. The law of Missouri is best summarized in the case of *In re Buder*, 358 Mo. 796, 217 S.W. 2d 563, which is discussed by both parties. There the Supreme Court of Missouri stated in part:

We agree that it is the general rule that trustees are always entitled to reasonable compensation. That is true even though the basis for computing such compensation, as is the case here, is not set out in the trust instrument itself. We also agree that conscionable trustees' commissions may be a proper subject matter of a binding contract between the beneficiaries on the one hand, and the trustees of a trust upon the other.

\* \* \* \* \* \* \*

In the absence of any express provision in the trust instrument fixing the trustees' fees or providing any basis for computing the same, and in the further absence of any later contract upon that matter, it is the general rule in Missouri that trustees' commissions are based upon the amount of the yearly income received and paid out by them. Kilpatrick v. Robert, 278 Mo. 257. 212 S.W. 884; Cornet v. Cornet, supra; In re Estate of Mays, 197 Mo. App. 555, 196 S.W. 1039; Fiske v. Buder, 8 Cir., 125 F. 2d 841, 847. See also, 2 Scott on Trusts § 233.3, page 1269; 2 Perry on Trusts, 7th Ed., § 919, Bridgeport-City Trust Co. v. First National Bank & Trust Co., 124 Conn. 472, 200 A. 809, 117 A.L.R. 1148, 1154, and cases there cited. In the absence of a statute fixing the compensation of trustees (Missouri has no such statute) the courts always allow trustees reasonable compensation, due regard being had for the character of the services rendered. Absent a contract and absent a provision in the trust instrument fixing the basis for computing trustees' commissions, the allowance as a trustees' commission of a portion of corpus upon final distribution to the beneficiaries (or remaindermen) does not go as a matter of right but is a matter wholly within the discretion of the court. There could be circumstances, of course, of unusual or extraordinary character in the matter of the services rendered which would justify a court in departing from the general practice of allowing trustees' commissions only out of the yearly income received and disbursed. That, however, is a question for the court to determine in each such case before it. \* \* \*

As indicated in the above quotation, there is no statute of Missouri fixing trustees' fees. Further, in this case, neither the grantor nor any court has fixed the fees of the trustees. Hence, the remaining question is whether the agreement, set forth in our Findings of Fact, which fixes the trustees' fees in part upon a percentage of the value, at the date of distribution, of the original principal of the trust, is to be construed as making such fees a charge against such principal, requiring that they properly be paid only out of the corpus of the trust, rather than out of income. Such agreement does not specifically state that the fees should be paid out of corpus, and it is the

position of the petitioner that the intention of the parties, as evidenced by what was actually done, was that while such fees were to be measured by the value of corpus, they were to be paid out of income.

The respondent cites the Restatement of the Law of Trusts, which contains the statement that "[t]he trustee's commissions with respect to principal, usually allowed at the beginning or on the termination of the trust, are payable out of principal." (See Restatement, Trusts, sec. 233, comment h (1959)). He also refers to the Uniform Principal and Income Act, 9B U.L.A. 382–383, which states that "[a]ll ordinary expenses incurred in connection with the trust estate or with its administration and management * * * except commissions computed on principal * * * shall be paid out of income," and that "[a]ll other expenses, including trustees's commissions computed upon principal * * * shall be paid out of principal." However, the Uniform Principal and Income Act has not been adopted in Missouri, and the rule set forth in the Restatement of the Law of Trusts can be taken as stating merely the rule prevailing in some, and perhaps in the majority, jurisdictions. We have found no Missouri case which either specifically adopts or rejects this rule. However, we agree with the contention of the petitioner that the normal rule in Missouri is that in the absence of an expression of the grantor, or an agreement between trustees and beneficiaries to the contrary, and in the absence of unusual or extraordinary services of the trustees with respect to corpus, trustees' fees are to be paid out of the income of the trust. In this connection it is to be noted that as shown in *In re Buder*, *supra*, the courts of Missouri follow the rule prevailing in Connecticut (*Bridgeport-City Trust Co.* v. *First National Bank & Trust Co.*, 124 Conn. 472, 200 Atl. 804), which is to this effect.

The general rule followed by the respondent is set forth in Rev. Rul. 55–574, 1955–2 C.B. 584, as follows:

it is held that amounts which are properly chargeable *only* to the corpus of a trust as non-business expenses incurred by the trustees are available as a deduction only to the trustees and may not serve to reduce the amount of distributable capital gain which is taxable to the beneficiaries. [Emphasis supplied.]

In the instant case it may well be that the trustees' fees in question would have been payable out of corpus in the absence of income of the trust, but we believe that they were not properly chargeable to corpus *only*. Here the evidence establishes that no unusual or extraordinary duties were contemplated for the trustees with respect to the corpus of the trust estate. Actually the functions of the trustees in accumulating the income and investing it were normal and ordinary duties of trustees. Under the circumstances, we think that the trustees and the beneficiary in their agreement fixing

trustees' fees intended to contract in the light of the general rule of the State, namely, that the trustees' fees should be payable out of income, even though to be computed in part upon the value of the principal of the trust. But even if the agreement should be construed as an agreement to pay these particular trustees' fees out of corpus of the trust, the subsequent payment thereof out of income, with the acquiescence of the petitioner, would, we believe, be tantamount to a revision of the original contract.

It is our conclusion that upon the basis of the particular facts here involved, and under the law of Missouri, the trustees' fees in question were properly payable out of income of the trust, and hence properly serve to reduce the distributable income of the trust which is taxable to the petitioner for the year 1953.

The instant case is distinguishable from the *Bryant* case, which was based primarily upon the law of the State of New York.

*Decision will be entered under Rule 50.*