WILL OF DES FORGES : DES FORGES and another, Appellants, vs. MARSHALL & ILSLEY BANK, Trustee, and another, Respondents.

*April 16—May 18, 1943.*

For the appellants there were briefs by *Karon & Weinberg* of Milwaukee, and oral argument by *Morris Karon.*

For the respondent Marshall & Ilsley Bank there was a brief by *Lorenz & Neubauer* of Milwaukee, and oral argument by *Ira S. Lorenz.*

For the respondent city of Milwaukee there was a brief by *Walter J. Mattison,* city attorney, and *Mathias Schimenz,* assistant city attorney, and oral argument by *Mr. Schimenz.*

ROSENBERRY, C. J.    Two questions are presented upon this appeal: (1) Should the carrying charges on the unproductive real estate be charged to income or should they be charged to corpus?    (2) Should the trustee's fees be apportioned and, if so, upon what basis?

(1) This precise question so far as we are advised or are able to ascertain has never been considered or decided by this court.    The matter was referred to in *Welch v. Welch* (1940), 235 Wis. 282, 330, 290 N. W. 758, 293 N. W. 150, but in that case the court found that the life tenants were estopped to raise the question.    While the court quoted with approval,

sec. 233 *m* of the Restatement, 1 Trusts, p. 689, it made no application of it.

A trustee may be called upon to deal with two kinds of unproductive property, first, that which was unproductive at the time of the creation of the trust; and, second, property which became unproductive during the course of the administration of the trust. In this case we are dealing solely with property of the second class, and it should be borne in mind that what is said here is said with respect to that class of unproductive property alone. The duties of trustees with reference to the two classes of property rest upon different bases and assumptions and are widely different in character. It is also to be noted that in this case the will contained no directions with respect to the carrying charges on unproductive property nor does the will contain any direction with reference to the disposition of unproductive property of either class. Where the trust estate originally includes unproductive property, ordinarily it is not difficult to find a manifestation of intention by the settlor either that the property should be retained although unproductive or that the beneficiary should receive no income with respect to it until it should be sold, and that then he should receive only income thereafter accruing from the investment of the proceeds of the sale. Where, however, property which is productive at the time of the creation of the trust subsequently becomes unproductive there is ordinarily nothing to indicate any intention on the part of the settlor with respect to the disposition of the property, and in such a case the equitable rule is that the whole loss should not fall upon the beneficiary entitled to the income and that when the property is sold the proceeds should be apportioned. 2 Scott, Trusts, p. 1367, sec. 241.3. Such inference as is to be drawn from the will in question supports the conclusion that it was the intention of the testator that the income of his estate should be paid to the life tenants,

his children, rather than disbursed for the benefit of the remainderman, the city of Milwaukee. This inference arises largely from the relationship of the testator to the life tenants and the reasonable inference that one naturally prefers members of his family in the distribution of his estate to strangers.

It is established in this case that the income which would otherwise have been distributed to the life tenants was drawn upon to the extent of $3,719.15 to pay the carrying charges on unproductive real estate. It is also undisputed that the unproductive property, lot 1, upon the sale brought more than this amount. There is therefore presented a clear question of how this fund should be distributed as between the remainderman and the life tenants. In some cases the contention has been sustained that the life tenant is entitled to interest on the sums withdrawn from income to pay carrying charges on unproductive property. We do not meet that question in this case by reason of the concession made by counsel for the life tenants already set out. See 2 Scott, Trusts, p. 1354, sec. 241.1.

We shall not attempt to make an analysis of the cases dealing with this question. While there is a substantial conflict of authority it is considered that the rule stated in the Restatement of the Law of Trusts is the sounder and better rule:

"Sec. 241. *Allocation on delayed conversion.* (1) Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property which the trustee is under a duty to sell, and which produces no income or an income substantially less than the current rate of return on trust investments, . . . and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in subsection (2)."

Under this rule it is clear that the life tenants are entitled to have refunded to them the amount withdrawn from income

in order to pay the carrying charges on lot 1 after it became unproductive down to the time of sale. As already stated, the question of apportionment does not arise on this phase of the case as the life tenants claim no more than a refund of the amount of carrying charges paid out of income.

It may be contended that under the circumstances of this case the trustee was not under a duty to sell the unproductive property. He may have been of the opinion in the exercise of sound judgment that a better price could be obtained for the property at a later period. As is stated in some of the cases it is hardly fair to the life tenants to require them to pay the carrying charges on the property while it is held for the benefit of the remainderman. It is also to be noted in this case that no claim is made of a surcharge against the trustee. The claim in this case relates solely to an accounting as between the life tenants and the remainderman of what the trustee admittedly received.

On behalf of the trustee it is argued that lots 1 and 2 should be treated as a unit. There is nothing in the will to indicate that it was the intention of the testator that they should be so treated. While in his will the testator speaks of "my two lots and the two houses thereon," this does not require that the two lots be treated as a unit in determining an allocation of the proceeds of the sale. We are cited to no authority and we find none so holding.

On behalf of the trustee the fact that the testator used the term "net income" is emphasized. While in some cases, as is illustrated in the case of *Welch v. Welch, supra,* the provisions of the instrument creating the trust may provide that net income means income after deducting all expenses including that of carrying charges of unproductive property, we find no language in the will parallel to that used in the trust instrument considered in *Welch v. Welch.* Nor do we discover any intimation on the part of the testator in this case that it was his intention that the net income to be paid

to the life tenants was the income after all charges, including those for carrying unproductive property, were deducted.

The court allowed the trustee fees in an amount equal to 5 per cent of the gross income of the estate down to and including 1938. In 1939 the court allowed 5 per cent of the gross income and one half of one per cent of the principal as compensation for the trustee. For the years 1940 and 1941 the court allowed a sum in excess of 5 per cent of the gross income. Just how the amount was arrived at does not appear. The trial court approved the action of the trustee in charging the whole amount of its fees to income. This resulted in a charge of 10.5 per cent against gross income in 1939, 20.2 per cent against gross income in 1940, and 16.2 per cent against gross income in 1941.

The applicable rule is stated in the Restatement of Trusts, sec. 242.

"Comment *b*. . . . In many states there is no statutory provision with reference to compensation of trustees. In such states the trustee is entitled to receive the fair value of his services, and the amount of the compensation and the time or times at which the trustee is entitled to receive it are subject to allowance or approval by the court. The court exercises its discretion in fixing the amount and time of payment of compensation, but such discretion is ordinarily exercised in accordance with rules and practices which have become established in the state, not as absolute rules but as rules to be applied in most cases.

"In the absence of a statute providing a definite rule fixing the amount of the trustee's compensation, the usual practice is to allow the trustee a percentage of the amount of the annual gross income and a percentage of the principal. Where, however, under the circumstances such percentage would be more or less than a reasonable compensation, the court may vary it. Among the circumstances to be considered in determining the amount of compensation are: (1) The amount and character of the trust property; (2) the extent of the risk and responsibility of the trustee; (3) the

character of the services rendered by the trustee; (4) the degree of difficulty in administering the trust; (5) the skill and success of the trustee in administering the trust; (6) the statutory rates of compensation for executors and administrators.

"In so far as compensation is determined upon a percentage basis, the commission upon income is ordinarily upon gross income received by the trustee, and the commission upon principal is ordinarily upon the net value of the principal at the time the compensation is fixed. If the trust property is subject to a mortgage, the amount of the trustee's commission is ordinarily based upon the value of the property less the amount of the mortgage."

See *Miller v. Payne* (1912), 150 Wis. 354, 136 N. W. 811; *Estate of Wells* (1914), 156 Wis. 294, 307, 144 N. W. 174.

The value of the estate in 1941 as appears from the account rendered by the trustee was $38,414.28. The amount allowed by the trial court to the trustee for its fees does not appear to us to be unreasonable or excessive. It is considered, however, that in this case so much of the trustee's fees as exceeds 5 per cent of the gross income should be charged to corpus and not to income and that the life tenants are entitled to a refund accordingly. During the years in question the work of the trustee consisted in collecting income and reinvesting such part of the principal as was paid in, the trust estate at that time having been reduced to securities. It cannot be said that the determination of the trial court as to the amount of fees is against the great weight and clear preponderance of the evidence. The situation with respect to the investment and reinvestment of funds and the collection of interest are matters within the knowledge and personal experience of the court. We see no reason upon the record for disturbing its conclusion.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the trial court to

modify the judgment as indicated in this opinion, each party to pay its own costs, the trustee to pay the clerk's fees in this court.

The following memorandum was filed June 16, 1943:

ROSENBERRY, C. J. (*on motion for rehearing*). Plaintiffs in this case move that the sum of $242.70 be awarded the plaintiffs upon apportionment of the net proceeds received for lot 1. The trustee received $4,636.85 from which should be deducted carrying charges paid out of income belonging to appellants in the amount of $3,719.15, leaving a remainder of $917.70, the net proceeds of the lot. This should be apportioned between the remainderman and the life tenants in accordance with the formula found in sec. 241, Restatement of Trusts. Applying this formula, there is due the appellants as life tenants the sum of $242.70. The opinion of the court will be modified accordingly, and the judgment to be entered by the trial court under the mandate of this court shall be increased in that amount.

*By the Court.*—It is so ordered.