NATHANIEL E. WORDIN'S APPEAL FROM PROBATE.

Third Judicial District, New Haven, Jan. Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Ordinary expenses, however large, incurred in the administration of trust
property, if properly and reasonably incident to the management of
the estate in behalf of the party equitably entitled to the accruing
income, and not resulting in a direct increase of the principal fund,
nor in substitutionary variations thereof, are, as a rule, payable from
the income, if sufficient for the purpose, unless it be otherwise pro-
vided by the terms of the trust.

In the present case this rule was *held* applicable to reasonable charges of
the trustee for his time, services and legal expenses in looking after
and foreclosing a mortgage on realty in Iowa; also to a charge for
money paid to satisfy a city assessment for asphalting the street in
front of land belonging to the trust, in the absence of evidence show-
ing that the improvement was of a permanent character. *Held* also,
that the terms of the will creating the trust contained nothing to
qualify or vary the general rule.

On the trial the life tenant offered to show that the foreclosure expenses
were large in comparison with the value of the mortgaged property,
not for the purpose of showing that the expenditures were excessive
and improper, but only that they were unusual and extraordinary
and therefore should be charged to the *corpus* of the trust estate.
*Held* that the evidence was inadmissible for this purpose and was
properly excluded.

Argued January 18th—decided March 9th, 1899.

APPEAL from an order and decree of the Court of Probate
for the district of Bridgeport, approving the account of a
testamentary trustee in charging certain items of expense to
the income rather than the *corpus* of the trust fund, taken to
the Superior Court in Fairfield County and tried to the court,
*George W. Wheeler, J.;* facts found and judgment rendered
confirming the action of the lower court, and appeal by the
life tenant for alleged errors in the rulings of the court. *No
error.*

The finding showed the following facts: The will consti-
tuting the trust, after making some particular legacies, pro-
ceeded as follows: —

"*Fifth.* I will, order and direct, that all the rest of my estate and property remain in the care and safe keeping of my executors during the lifetime of my said wife, Fanny Augusta, and that my executors shall collect the rents, dividends, and interest which may accrue thereon as it becomes due, and pay the legal taxes, insurance, and necessary repairs on the buildings, and other legitimate expenses, and pay over the balance to my said wife semi-annually, or from time to time as may be needful, to be used or invested as her own absolutely. *Sixth.* At the decease of my wife, Fanny Augusta, aforesaid, I give, devise and bequeath to my executors in trust, so much of the homestead, No. 334 State street, as lies south of a line parallel with State street, and distant therefrom one hundred and fifty feet, for the free and unmolested use of my daughters, Helen C. and Fanny L., aforesaid, jointly during their natural lives, or the lifetime of the survivor of them. My said executors to pay legal taxes and assessments thereon, and keep the same in repair out of any funds belonging to my estate, during said term. At the decease of both daughters, aforesaid, the property shall become and be a part of the residue of my estate, and treated as such. *Seventh.* At the decease of my wife, Fanny Augusta, aforesaid, subject to the foregoing, I will and direct that the residue and remainder of my estate be divided into four equal shares, and I give, devise and bequeath to my executors and their successors in trust, one of said shares for each of my children, to wit: Helen C., Nathaniel Eugene, Fanny L., and Thomas C., aforesaid, in the manner and for the purposes hereinafter provided and stipulated: First, one share shall be held and managed for my son, Nathaniel Eugene Wordin, M. D., aforesaid, and the net income, rents and profits paid over to him semi-annually, during his natural life. If, at his death, he shall leave a son or sons, his own issue, then I will that said share become and be vested in said son or sons, share and share alike, absolutely, and to his or their heirs. Second, two shares shall be held and managed for Helen C., and Fanny L., aforesaid, and the net income paid over, one-half to each, respectively, semi-annually. Upon the death of either, the sur-

vivor shall take the net income of both shares during her natural life. Third, the remaining one share shall be held and managed for my son, Thomas Cooke Wordin, aforesaid, and the net income paid over to him semi-annually, during his natural life. If, at his death, he shall leave a son or sons, his own issue, then I will that said share become and be vested in said son or sons, share and share alike, absolutely, to his or their heirs. *Eighth.* Upon the successive termination of the life uses hereinbefore provided, I give, devise and bequeath the estate and property held therein, to the American Home Missionary Society."

It was then provided that the Society should add the interest to the principal until the whole amounted to $1,000,000 in value, and might then use the income for its charitable purposes. Should "any loss occur to said trust fund by depreciation or otherwise," the loss was to be made up from the income, so as to keep the fund always at the value of $1,000,000. His executors and trustees were given full power to sell, exchange, re-invest, and "generally do whatever may be necessary and proper, from time to time, to carry out effectually the provisions of this will."

The estate was duly settled, and the distributive share to be held in trust for Dr. N. E. Wordin was transferred to a trustee duly appointed, there being embraced therein a mortgage upon land in Iowa, then under process of foreclosure (there having been a default upon the interest) in a suit pending in favor of the executor. The mortgagor was of no financial responsibility, and nothing could be collected upon the mortgage indebtedness by the trustee, unless it were by means of foreclosure proceedings. The trustee received an offer of other property in exchange for the mortgage, and went to Iowa to get the necessary information, as to both properties. He charged in his account $147 for his time and expenses in making the trip, and also $175 for money paid by him for legal expenses incident to the foreclosure suit, in which a decree was obtained. A new trial was afterwards granted in favor of the mortgagor, and since then the trustee has not pressed the suit. The mortgaged property is mainly

unimproved, and as it stands could not be made to pay the cost of maintenance. Said charges were reasonable and the expenditures necessary to fulfill the trust. He also charged $112 for money paid to satisfy a lien for a city assessment laid for asphalting a street in Bridgeport in front of land belonging to the trust. No evidence was submitted as to whether this was or was not a permanent improvement. Dr. Wordin is 54 years old.

On the trial of the appeal, the appellant's counsel asked the trustee how much he thought it would cost to realize on the Iowa mortgage, and also what was the value of it, stating that the object of the question was to show that the expenses incurred in the foreclosure were only a part of what it would cost, which would be about $500 and therefore was not an ordinary current expense of administration, but an extraordinary one. The court excluded each question successively, stating that while the appellant might be entitled to prove the value of the asset and the cost of realizing upon it, for the purpose of showing that it was not worth any effort at collection, he was not entitled to show these facts for the purpose of contending that the expenditures already made were of an extraordinary character, it not being claimed that such expenditures were improper, excessive, or unreasonable.

The plaintiff made the following claims of law, which were overruled: (*a*) That the municipal assessment for asphalting Main street, assessed against the real estate and charged by the trustee to the income, constituted a part of the *corpus* of the trust fund, and should be apportioned between the life tenant and remainder-man. (*b*) That said asphalting was in its nature a permanent improvement, and the expense of the same should be apportioned between the life tenant and remainder-man. (*c*) That the expense of preserving a definite investment that was not income-producing, and constituting a part of the principal fund, should be apportioned between the life tenant and the remainder-man, or charged against the *corpus* of the estate. (*d*) That neither of the items of account complained of and appealed from were, in law, ordinary current expenses incident to the management of the

trust, but were of apportionable benefit to the inheritance. (*e*) That it was the duty of the trustee to convert said defaulted mortgage into income-producing property at the expense of the trust fund. (*f*) That said apportionment should be made by determining the present value of benefits derived from said expenditures, or by deducting the same from the principal fund.

*Stiles Judson, Jr.*, for the appellant (life tenant).

The more recent adjudications are to the effect that equity will apportion between the life tenant and the remainder-man, the burdens incident to the administration of the trust, whenever the nature of the burden is such as to make it equitable to do so. *Stone* v. *Littlefield*, 151 Mass. 486; *Howland* v. *Green*, 108 id. 283; *Sohier* v. *Eldredge*, 103 id. 345; *Parsons* v. *Winslow*, 16 id. 361. The outlay at Emporia should be regarded as a loss of that sum, incident to the change in the investment, and where such loss occurs there should be an equitable apportionment. *Greene* v. *Greene*, 19 R. I. 622; *Hagan* v. *Platt*, 48 N. J. Eq. 206. This doctrine will be regarded with special favor where the particular investment that gives rise to the expenditure produces no income to the life tenant. *Stone* v. *Littlefield*, *supra ; Hite's Devisees* v. *Hite's Ex'r*, 93 Ky. 257. In the case at bar the executors had already commenced the proceedings that have occasioned the expense. Had the distribution been delayed, these expenses would have been a charge against the whole estate. The circumstance that at that stage a distribution to the trustees was made, ought not, in equity, to be regarded as affording a basis for thrusting this burden upon the life tenant. *Com.* v. *Cuffee*, 108 Mass. 285; *Dent* v. *Dent*, 80 Beav. 363. As regards the municipal assessment imposed upon this life tenant, the rule is well nigh universal that a compulsory payment of that kind should be apportioned between the life tenant and remainder interest. *Moore* v. *Simonson*, 27 Or. 127; *Stevens* v. *Melcher*, 80 Hun (N. Y.), 517; *Peck* v. *Sherwood*, 56 N. Y. 615; *Plympton* v. *Dispensary*, 106 Mass. 546. The appellant offered evidence to show that

the expenditure by the trustee (while reasonable from the standpoint of the whole estate), was in fact a part of a much larger expenditure than would be necessarily involved in the litigation that the trustee had undertaken. This fact was material in ascertaining whether the items under discussion were in their nature ordinary current expenditures.

*Howard H. Knapp*, for the appellee (remainder-man).

The general rule in this country is that where a trust created by will provides that the net income, rents and profits are payable to one during life, with remainder to another, taxes, repairs, etc., and the expenses of the management of the estate are to be deducted from the income of the trust fund, and not from the *corpus* of the fund, unless the will itself requires that the same should be paid out of the principal. 2 Perry, Trusts, § 554; 13 Amer. & Eng. Ency. of Law, 212; 27 id. 173; *Atlantic Trust Co.* v. *Powell*, 50 N. Y. Supp. 866. The rule above stated has been approved of by this court in *Guthrie* v. *Wheeler*. 51 Conn. 207, 212. Where a trustee has invested funds in mortgages on certain property, and has been obliged to foreclose those mortgages and buy the property in at foreclosure sale, it is not a change of investment. *Park's Est.*, 173 Pa. St. 194. The same general rule of law is decisive of the matter of the city assessment paid by the trustee in connection with the asphalting of Main street in Bridgeport. 2 Woerner, Adm. 1002; *Varney* v. *Stephen*, 22 Me. 334; *Garland* v. *Garland*, 75 id. 97; *Wheeler* v. *Addison*, 54 Md. 47; *Hagan* v. *Varney*, 147 Ill. 281; *Bowen* v. *Tyrell*, 113 Mo. 175; *Pierce* v. *Burroughs*, 58 N. H. 302; 2 Beach, Trustees, § 626; Hill, Trustees, 606; *Warren* v. *Warren*, 148 Ill. 652; *Outcault* v. *Appleby*, 36 N. J. Eq. 73. The intention of the testator clearly requires that these items in question should be charged to income and not to the capital of the fund. *In re Albertson*, 113 N. Y. 439. Although the rule obtains in some States that assessments must be apportioned, it must be confined to permanent improvements; and consequently in those cases where the improvement is required by local ordinances or statute, and from its nature

is of such a character as that it will require frequent renewals, the expense of making the repairs is to be paid by the life tenant alone. Kerr, Rl. Est. 506. The New York rule is in conflict with that of other States. *Stone v. Littlefield*, 151 Mass. 486, is plainly in conflict with the law of this State requiring taxes to be paid by life tenant's interest and not out of principal. The evidence offered was properly excluded.

BALDWIN, J. It was the duty of the trustee to protect his interest under the Iowa mortgage. He was properly allowed to deduct from the income otherwise payable to Dr. Wordin, the amount of his reasonable expenses in prosecuting the foreclosure suit brought by his predecessor and pending at the time of his appointment, as well as for those incident to his personal investigation of the mortgaged property and of that which had been offered to him in exchange for it. They were expenses attending the administration of the trust in ordinary course; and ordinary expenses of administration are properly deducted from the fruits belonging to the party in immediate enjoyment of the equitable estate. That these were large, either as considered by themselves or in comparison with the value of the mortgaged property, did not tend to prove that they were of such an extraordinary character as to make them a charge on the *corpus* of the trust estate. Evidence to that effect would have been pertinent, as was intimated by the trial court, to show that the expenditures should not have been made at all, because the asset was not worth what it would cost to protect and preserve it; but none was offered having such a purpose in view. It is the nature, object and result, rather than the amount of an expenditure, which usually determines whether it is chargeable to a life tenant or to the remainder-man. However large, if properly and reasonably incident to the management of the estate in behalf of the party equitably entitled to the accruing income, and not resulting in a direct increase of the principal fund, nor in substitutions which vary the items of which that is composed, a trustee's charges and disbursements are, under ordinary circumstances, payable from its income, if that be sufficient for the purpose,

unless it be otherwise provided by the terms of the trust. *Guthrie* v. *Wheeler*, 51 Conn. 207.

The same considerations, in the main, apply to the assessment for an asphalt pavement in Bridgeport in front of land belonging to the trust. The trustee was under a legal obligation for its payment. *Nichols* v. *Bridgeport*, 23 Conn. 189; General Statutes, § 3901. Had the improvement been shown to be of a permanent character, an equity might have arisen to an apportionment of the expense between the life tenant and the devisee in remainder, or for decreeing the payment of the lien out of the principal of the fund, and an annual charge thereafter of the interest on such payment against the income otherwise going to Dr. Wordin. *Plympton* v. *Boston Dispensary*, 106 Mass. 544. But in the absence of evidence to show that this particular pavement had especial qualities of durability, the Superior Court might properly take judicial notice of the usual effect of time and use in our climate upon asphalt on the streets of a populous city. The life tenant is a man of middle age. The tables of mortality indicate that he may outlast the pavement, and the added value which it gives to the land be entirely exhausted in increasing the income which he enjoys. Remainder-men are not ordinarily chargeable for uncertain and conjectural benefits, which they may never receive.

The will under which the trust now in question was constituted contains nothing to vary the general rule. It is plain that a principal object of the testator was to provide for the ultimate accumulation of a fund of the value of a $1,000,000, for charitable purposes. This fund was to be kept forever intact, the income to be held back from time to time to replace losses, should such occur. The trust for his daughters was to terminate with their lives, and the half of the estate held for their benefit was to pass into the charitable bequest. Should either of his sons die without male issue, the share otherwise given to such issue was also to go in the same direction. The trust in favor of each of his four children respects only " net " income of the share set apart for that purpose. The prior trust in favor of his wife, under which

she had the benefit for her life of the entire residuary estate, gave her the balance of the accruing "rents, dividends and interest," after payment by the executors of "the legal taxes, insurance, and necessary repairs on the buildings, and their legitimate expenses." These words may fairly be taken to indicate what the testator regarded as constituting "net income."

In creating the life estate in joint tenancy in favor of his daughters in part of the homestead, after his wife's decease, he was careful to provide that his executors were "to pay legal taxes and assessments thereon, and keep the same in repair, out of any funds belonging to my estate during said term." Here "assessments" are classed with taxes and repairs as charges which it was necessary to meet in order to assure to the life tenants the "free and unmolested use" of the premises, and which were to be paid from the general residuary estate, whether they occupied the house as a residence for themselves, or let it and took the rent.

Had the offer of an exchange for the Iowa mortgage been accepted by the trustee, it may be that the property thus acquired to replace it would have been a proper subject of apportionment, and that it might have been equitable to charge the expenses of the Western trip in whole or in part upon the *corpus* of the trust. The same might have been true if the decree of foreclosure had not been set aside. But as things were, neither the decree nor the uneffected exchange brought anything new to the estate or added to its amount.

The appellant claimed before the Superior Court that it was the duty of the trustee to convert the defaulted mortgage into productive property at the expense of the *corpus* of the estate. This raises a question not in the case. The foreclosure may have been brought and prosecuted simply as the best means of exacting payment of the interest in arrears. There has as yet been no conversion of the security into any other form of investment. Should one be hereafter effected, the occasion will then first arise for determining, in view of all the attending circumstances, what equity may require. *In re Tuttle,* 49 N. J. Eq. 259, 24 Atl. Rep. 1; *Greene* v.

*Greene,* 19 R. I. 619, 622, 35 Atl. Rep. 1042; *In re Park's Estate,* 173 Pa. St. 190, 33 Atl. Rep. 884. It does not now appear that any loss of principal has been incurred. It may be that the interest in default will yet be collected and the mortgage preserved intact.

There is no error.

In this opinion the other judges concurred.