THE BRIDGEPORT-CITY TRUST COMPANY, TRUSTEE, *v.*
THE FIRST NATIONAL BANK AND TRUST COMPANY
OF BRIDGEPORT, TRUSTEE, ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued June 9th—decided June 30th, 1938.

*Arthur M. Marsh,* with whom was *Norman K. Parsells,* for the plaintiff.

*Lawrence A. Howard,* with whom was *Charles S. House,* for the defendants other than Henry B. Stoddard.

*Louis H. Porter, Jr.,* filed a brief as amicus curiae.

HINMAN, J.  The question as to which advice is sought by this action is whether the plaintiff, a corporate trustee acting under the circumstances alleged in the substituted complaint and admitted by all the defendants, may charge against the corpus of the trust a portion of its annual fee for services.  The trust here involved was created by a deed of trust dated December 13th, 1914, by Julia E. Stoddard, now deceased, conveying certain securities in trust to the Bridgeport Trust Company of which the plaintiff is the successor trustee.  The deed provides that the trustee is to

"hold, invest and reinvest" the corpus and pay over to the settlor's son Henry B. Stoddard "the net income thereof during his life"; upon his death the trustee is directed to pay the principal, share and share alike, to such of his children as survive him and, per stirpes, to the lineal descendants of any deceased child; failing children of Henry or lineal descendants of such children there is a substitutionary remainder to the settlor's son Sanford Stoddard, and if he be dead, to his children and the lineal descendants then living of any deceased child. If there be none of the foregoing remaindermen existing at Henry's death, there is a further substitutionary gift of the principal to The Bridgeport Hospital. On or about December 1st, 1937, Sanford Stoddard executed and delivered a trust deed to the defendant the First National Bank and Trust Company of Bridgeport conveying all of his right, title and interest under the Julia E. Stoddard trust to that bank as trustee. The plaintiff, as trustee of the Julia E. Stoddard trust, has rendered to Henry B. Stoddard and the trustee of the Sanford Stoddard trust an account covering the period from December 16th, 1936, to December 16th, 1937, in which it has made a charge of $341.40 for its services as trustee for that period, of which sum, although the income for the period amounted to $4292.09, it has charged $104.30 against the principal of the trust and $237.10 against the income thereof.

The plaintiff has invested and reinvested the principal of the trust, and during the year covered by its account and theretofore has periodically considered and examined the assets composing the trust fund with respect to such investments and reinvestments, for the preservation and safety of the principal fund as well as for the protection of income therefrom in such measure and degree as was consistent with such

preservation and safety. For this purpose the fund was placed under the personal supervision of a vice president and trust officer of the plaintiff, who has conferred with Henry B. Stoddard as to all purchases and sales of trust investments. The plaintiff maintains an investment department devoted exclusively to investigation of the advisability of changes of investments and as to what securities should from time to time be purchased or sold by its various trusts; it also has a trust committee composed of four trust officers, two assistant trust officers, three directors of the bank, and the head of the investment department, and each change made in this particular trust has been passed upon and approved by the investment department, the trust officer in charge of the trust, the trust committee and Henry B. Stoddard. The plaintiff maintains constantly a list of the various securities in all the trust funds which it holds as trustee and a list of the holdings of each separate trust in each particular security. Daily supervision of active securities is maintained, and inactive securities are frequently examined and analyzed. The plaintiff also maintains a separate department devoted to supervision and investigation of mortgage loans held in trust funds and the property securing such loans. During the period of the account the trust has had the benefit of all of these services of the plaintiff. None of the defendants question the reasonableness of the amount of the trustee's fee or of the stated proportions as between income and principal if allocation be approved, but the defendants, other than Henry B. Stoddard, being or representing potential remaindermen, claim that the plaintiff is not entitled to charge any portion of it against the corpus of the trust.

While several states have statutes regulating the fees of fiduciaries, including trustees, and a few pro-

viding for allocation thereof as between principal and income, this State has no such statute and the matter of compensation is wholly within the discretion of the appropriate court. 1 Cleaveland, Hewitt & Clark, Probate Law and Practice, p. 189; 2 Perry, Trusts & Trustees (7th Ed.) p. 1545. Where compensation is regulated by statute, provision is usually made for a commission of a stated or limited percentage upon the amount of yearly income received and paid out by the trustee; in some states a commission is allowed for receiving and investing the principal fund or a commission at the termination of the trust for the care of the fund and for distributing it to those entitled to it. See 4 Bogert, Trusts & Trustees, p. 2851 et seq.; Restatement, Trusts, Vol. 1, p. 740. Permissive allocation of a portion of trustees' compensation to the corpus of the trust is provided by statute in Georgia, Kentucky and Maine, the Maine statute, Chapter 75, § 43, Revision of 1930, providing that executors, administrators and trustees, in addition to certain specified travel and per diem fees for attending court, may be allowed, at the discretion of the judge, "having regard to the nature, liability, and difficulty attending their trusts, a commission not exceeding five per cent on the amount of personal assets that come into their hands . . . ; and trustees may receive yearly such additional sum for the care and management of the trust property as the court . . . shall allow not exceeding, however, in any one year, one per cent of the principal, . . . said additional sum . . . to be charged against principal or income, or both and if charged against both, to be charged in such proportions as the court shall determine."

The Uniform Principal and Income Act, approved in 1931 by the national conference of commissioners on uniform laws, which has been adopted, so far,

only in Oregon, Florida, North Carolina and Virginia, includes, in § 12, the following provision: "All ordinary expenses incurred in connection with the trust estate or with its administration and management, including regularly recurring taxes, . . . water rates, premiums on insurance taken upon the estates of both tenant and remainderman, interest on mortgage on the principal, ordinary repairs, trustees' compensation except commissions computed on principal, [and] compensation of assistants, . . . shall be paid out of income. . . . All other expenses, including trustee's commissions computed upon principal, cost of investing or reinvesting principal, attorneys' fees and other costs incurred in maintaining or defending any action to protect the trust or property . . . and costs of, or assessment for, improvements to property forming part of the principal, shall be paid out of principal."

In the states in which there is no statutory provision with reference to the compensation of trustees, the court having jurisdiction exercises its discretion in fixing the amount and the time or times at which the trustee is to receive it, "but such discretion is ordinarily exercised in accordance with rules and practices which have become established in the State, not as absolute rules but as rules to be applied in most cases." Restatement, Trusts, Vol 1, p. 741; 26 R. C. L. p. 1392. This discretion also may extend to determination as to whether the compensation shall be charged against income or principal, or apportioned between them. As to all these questions much depends upon the circumstances of each particular case. Generally compensation payable out of corpus has been allowed only at the termination of the trust but there may be circumstances of an unusual or extraordinary character which require or justify a departure from the general practice. 65 C. J. pp. 917, 918.

In most of the cases relied on by the plaintiff, allowance of compensation out of principal was granted at the closing of the trust or upon the final account of the trustee. *Ellis* v. *Ellis,* 29 Mass. (12 Pick.) 179; *In re Kruce's Estate,* 10 Cal. App. (2d) 426, 51 Pac. (2d) 1174 (compensation for services after the death of the life beneficiary in closing up and distributing the estate); *McAfee* v. *Thomas,* 121 Ore. 351, 255 Pac. 333; *Loud* v. *St. Louis Union Trust Co.,* 313 Mo. 552, 281 S. W. 744; *Commercial Trust Co.* v. *Spiegelberg,* 117 N. J. Eq. 171, 175 Atl. 164; *Magruder* v. *Drury,* 235 U. S. 106, 35 Sup. Ct. 77; *Barney* v. *Saunders,* 57 U. S. (16 How.) 535; *McGuffey's Estate,* 123 Pa. Sup. Ct. 432, 187 Atl. 298; *Bosler's Estate,* 161 Pa. St. 457, 29 Atl. 57; *Biddle's Appeal,* 83 Pa. St. 340. In *Sheffield* v. *Cooke,* 39 R. I. 217, 98 Atl. 161, the court recognized that generally compensation out of principal will not be allowed until the termination of the trust, but evidently regarded the circumstances of the case as being of the "unusual and extraordinary character" permitting a departure and approved a present charge against principal of compensation to trustees for making permanent improvements in real estate and converting real estate into personalty. The plaintiff in the instant case asks not only that sanction be given to an allocation of trustee's compensation as between services pertaining directly and entirely to income and those rendered in conserving the principal, but also that the payment of the latter compensation be not limited to the time when the trust or the trustee's connection with it terminates but that payment of it, out of principal, may be made coincidentally with payment of compensation relating to and out of income, annually or at other recurring periods.

It is conceded that both the general rule and the

practice in this State has heretofore been that under ordinary circumstances, unless otherwise directed in the instrument creating the trust, trustee's compensation is payable out of the income, if that be sufficient for the purpose, and is allowed and paid as a lump sum either periodically or at the closing of the trust. *Wordin's Appeal*, 71 Conn. 531, 537, 42 Atl. 659; *Guthrie* v. *Wheeler*, 51 Conn. 207, 212, 213; *Hayward* v. *Plant*, 98 Conn. 374, 387, 119 Atl. 341. It was held in *Wordin's Appeal*, supra, 537, that "expenses attending the administration of the trust in ordinary course . . . are properly deducted from the fruits belonging to the party in immediate enjoyment of the equitable estate." The further intimation that as to trustee's charges and disbursements not properly and reasonably incident to the management of the estate on behalf of the party equitably entitled to the accruing income, and resulting in an increase in the principal fund or in substitutions of the items of property comprising it, "an equity might have arisen to an apportionment of the expense between the life tenant and the devisee in remainder," apparently contemplated and was made with reference to permanent improvements to real estate included in the corpus, conversion of real estate into personalty as in *Sheffield* v. *Cooke*, supra, or the like; it obviously did not extend to charges merely for the ordinary care and administration of the property comprising the fund, and no instance has been brought to our attention in which it has been so construed.

"In the case of a continuous trust, one duty of which is to preserve the fund, as a source of periodic interest, dividends, rents, etc., the authorities do not recognize a right in the trustee, except in extraordinary circumstances, or when the instrument by which the trust is created so indicates, to diminish the fund

which is to create the income during the life of the trust. . . . The reason is inherent in the nature of a trust. Its purpose is to preserve, and it may be of unlimited duration. . . . Hence, if commissions upon the capital are awarded to the successive trustees who may be called to its management, the fund, instead of being intact, may be absorbed in the payment of its custodians." *Bosler's Estate,* supra, 462. A like possibility of course would inhere in depletion of the principal by annual allowances for trustee's services. Thereby the intention of the creator of the trust, often if not usually his principal purpose, to preserve and pass on the fund intact to those entitled ultimately to receive it, would be impaired, or perhaps entirely defeated by exhaustion of the principal.

The plaintiff, reinforced by citation of published arguments by and on behalf of corporate fiduciaries, contends that, notwithstanding, services such as those rendered by it for this trust, in continuous skilled supervision of the securities comprising the corpus and the making of resultant changes in investments, being for the preservation and increase of the principal as well as the income and a modern development foreign to the more simple conditions formerly obtaining, when administration was less complex and difficult, are so "extraordinary" as to be so far regarded as an exception to the rule as to warrant an apportionment of its periodic charges between principal and income. There is nothing which differentiates in principle the services rendered by this plaintiff from those ordinarily devolving upon and performed by a trustee of any continuing trust.

To us a potent further consideration, in addition to that of depletion of the fund, is the obvious inference that this trust, and the many others in existence in this State, in which no express direction as to trus-

tees' fees has been given, have been created in contemplation of the general rule hitherto prevailing and with an imputed intent and a justified expectation that trustees' compensation for ordinary administration, during the continuance of the trust, would be paid out of income, without diminution thereby of the principal fund. If a departure from this rule was desired by the creator of the trust, it was quite open to direction in the instrument creating it. We do not feel warranted in inaugurating by judicial fiat the innovation which the plaintiff seeks, which would work such a material departure from the imputed intent of the settlor, and in view of the conceded large total in number and amount of the trusts held and administered by corporate fiduciaries in this State would be far reaching in its effects and results. If the considerations urged by the plaintiff in support of its proposition are sufficiently weighty to justify its adoption, it is, instead, a proper matter for legislative action. Indeed, the Uniform Principal and Income Act above referred to and quoted from has been already twice introduced in the General Assembly, House Bill 361, Session of 1935, and House Bill 1393, session of 1937, but has not been adopted.

To the question reserved: May the plaintiff trustee charge against the principal of the trust fund the amount specified in its annual account, our answer is "No."

No costs will be taxed in this court.

In this opinion the other judges concurred.