BOEHME and others, Plaintiffs, vs. LINTNER and others, Defendants and Respondents: TRIESCHMANN, Plaintiff and Appellant: SMITH, Intervening Defendant and Appellant.*

*September 14—October 12, 1943.*

* Motion for rehearing denied, with $25 costs, on December 7, 1943.

492

*Alvin Juedes* of Milwaukee, for the appellants.

For the respondents there was a brief by *John M. Niven* of Milwaukee, attorney, and *Jerome J. Foley* of Racine of counsel, and oral argument by *Mr. Niven*.

FAIRCHILD, J.    Between 1920 and 1923, plaintiffs and a number of other persons, estimated at about four hundred fifty, subleased lands in Refugio county, Texas, from one Thomas L. Pratt and W. E. Hewit.    These subleases were all subject to the terms of a master lease providing that leases must be validated by drilling a certain number of wells and by other evidences of intention to develop the property. Upon the failure of the leaseholders to fulfil the provisions of

the master lease, action was commenced in Texas by the land-owners to cancel the leases. The Pratt-Hewit Corporation, Houston Oil Corporation, and all the subleaseholders were joined as defendants in that action. Since the leaseholders had failed to carry out their part of the agreement, Robert Cole, an attorney retained by the Pratt-Hewit Corporation, advised a settlement. He addressed a letter to the leaseholders on March 5, 1938, in which he informed them of a proposed settlement giving one fourth of the land to the successors of the original lessors, one fourth to the subleaseholders and one half to the landowners, and asked them to agree to the settlement. It was stated in the letter that each subleaseholder would have in the new lease or leases to be executed to the trustees, his part in the same proportion that the original acreage bore to the entire acreage originally leased by all. A form letter was inclosed, authorizing the carrying into effect the proposed settlement and giving full power and authority to the trustees to effectuate the settlement in such a way as they and their attorney might see proper and necessary under the circumstances. Approximately ninety to ninety-five per cent of the former leaseholders, including the plaintiffs and intervening defendant, signed the letter and returned it to the trustees. The stipulation of settlement was executed, containing the essential provisions outlined in the letter of March 5th, and providing that the landowners would execute leases to Messrs. Sharp, Lintner, and Mullaney as trustees or to any corporation to which they might direct. The trustees decided that it would be in the best interests of all the lease-holders to form a corporation and have the leases run directly to the corporation. Accordingly, the Texas-Wisconsin Oil Company was organized in June, 1938, with an authorized capital of twenty-five thousand shares of $1 par value each, and with the three trustees and two others as directors. That corporation is not a party to this action. After its formation, in accordance with the settlement agreement, leases were exe-

cuted to the corporation covering 2,719.54 acres of land, the amount of acreage to which the leaseholders were entitled. On October 25th, Mr. Cole wrote to all leaseholders outlining the settlement of the Texas case. He explained why a corporation had been formed, and informed the leaseholders that each would be entitled to two shares of stock for each acre of land on which he held leases, and that all stock not issued would be held in the treasury as assets of the corporation in which all of the leaseholders would be interested in due proportion. Printed forms were inclosed upon which each leaseholder was to specify the number of shares to which he was entitled and the name of the person to whom the stock was to be issued. Approximately ninety-seven per cent of the former leaseholders, including the appellants, signed and returned their questionnaires.

In the latter part of October, 1938, the question of compensation of the trustees was taken up with the board of directors of the corporation and the payment of stock for services was approved in the following amounts : Two hundred shares to Mr. Sharp and Mr. Mullaney and one hundred twenty shares to Mr. Lintner. The stock was issued as compensation for past and future services so long as the trust continued. The issuance of stock to the trustees as compensation was made known to every registered or known leaseholder by means of official reports of the corporation to its stockholders, and the matters in difference between appellants and the trustee respondents on this record were submitted to the circuit court.

That court decided that in accordance with Mr. Cole's letter of March 5, 1938, a trust was set up and the defendants became the duly appointed and acting trustees thereunder ; that the trustees were entitled to a reasonable compensation for their services, and that the stock issued was such reasonable compensation ; that under the circumstances it was properly paid out of the corpus of the trust.

The objections on the part of the appellants are: That the power authorizing the trustees to effect the settlement as contained in the form letter inclosed in the letter of March 5, 1938, and the stipulation for settlement of the Texas controversy was narrow and limited to distributing the stock in the corporation subsequently formed, *pro rata* according to the respective interest of each leaseholder; that by withholding some of the stock from distribution, the trustees violated their trust. Also, that the trustees being officers in the corporation and in a position to benefit by payment of shares in the corporation were not capable of receiving compensation out of the corpus of the trust.

The form letter of March 5th, relied upon by the appellants, cannot be construed to limit the powers of the trustees in the formation of the corporation. The words "to consummate and carry into effect the settlement . . . by such legal means as you and said attorneys see proper" and those authorizing them "to effectuate such settlement in such way as you and your attorneys may see proper and necessary under the circumstances" were included to and did give the trustees discretionary powers in the formation of the company and the administration of the trust in the interest of the beneficiaries.

The trustees did become directors and stockholders of the corporation when they acquired the stock. They continued to act as trustees discharging their obligations to certain beneficiaries of the trust. The exigencies arising from the complications justified, if they did not require, the trustees placing themselves in the position now claimed to be unauthorized and to raise such a conflict between their official responsibilities and their individual interest as to deprive them of a right to compensation. But the beneficiaries, now stockholders in the corporation which was set up, were advised of the transactions and they consented to all that was done. Now to apply rules strictly governing trustees dealing with themselves would be placing form over substance. When the

corporation was originally organized, all the stock was sub-scribed for by the trustees except a few so-called qualifying shares. They paid for the stock by causing the new leases to be granted to the corporation and they then became the owners of the stock. The interests of the beneficiaries were not dissipated by the transformation from beneficiaries to stockholders. As suggested by the respondents in their brief: "The interests of the stockholders and of the beneficiaries of the trustees were identical. They were both interested in developing the land and securing the greatest returns." So far as the beneficiaries are concerned, with relation to control, they seem to constitute a large majority of the company's stockholders. In the record before us there is no showing that any undue advantage possessed by respondents because of their position as trustees was taken by them or that the fundamental duty based on the obligation of loyalty owed by trustees to beneficiaries has been violated. The burden of showing themselves free from such failure, we must conclude, was met, for this matter was called to the attention of the trial court and it was then held:

"The question of the compensation of the trustees for their services is not provided for in the instruments creating the trust, but their right to compensation necessarily springs from the facts of performance and ratification. The services per-formed by the trustees were of a high order, resulting in real and substantial benefits to the leaseholders. Their work was of an exacting nature, painstakingly done, and the interests of the leaseholders were preserved through their work when these interests could have been lost to them. There was no fraud or double dealing, and necessary information of the doings of the trustees was given to the leaseholders."

The retention of some shares of stock held in trust for other leaseholders was a provision for those claims that might subsequently be made, and in a letter dated October 25, 1938, the beneficiaries were fully informed that after the shares

were distributed *pro rata,* two shares per acre held under the former leases, the balance would be held in the treasury as assets of the corporation in which each would be interested in due proportion. There was no violation of the powers conferred by the beneficiaries in the March 5th letter, as the court found. The trustees in good faith, formed the corporation, adopted a plan of distribution of the company's stock which offered the maximum benefit to the beneficiaries, after an investigation and determination of the rights of the former leaseholders.

So far as the record discloses, there is nothing to warrant refusing the trustees a reasonable compensation. Nor does any reason exist under the circumstances for disturbing the ratification and approval by the trial court of the payment out of the corpus. *Bridgeport-City Trust Co. v. First National Bank & Trust Co.* (1938) 124 Conn. 472, 200 Atl. 809, 117 A. L. R. 1148, 1154; *Will of Des Forges,* 243 Wis. 178, 9 N. W. (2d) 609; 26 R. C. L. p. 1391; 65 C. J. p. 910.

*By the Court.*—Judgment affirmed.