[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. INTRODUCTION
The appellants, who hold 65 shares of the 110 shares of the residuary estate of the decedent, Elinor O. Czapski, have appealed to this court from the allowance of an interim accounting by the Probate Court for the District of Norwalk. This interim accounting covered the period from the decedent's death on July 26, 1982 through and including September 25, 1985. The objections raised in the Probate Court by the appellants herein related to the reasonableness of the co-executors' fees, and the fees charged by Attorney Cowell's firm. The appellants also claimed in the Probate Court that the co-executors should be surcharged for the alleged loss on the sale of the real estate on CT Page 3053 Wilson Point. This surcharge claim was abandoned by the appellants on the second day of trial.
The guidelines for compensation of attorneys are set forth in the Connecticut Probate Practice Book, published by the Probate Court Administrator.[1] It reads, in part, at pages I-35 and I-36, that:
 "[i]n cases where the attorney acts both as a fiduciary and as legal counsel, the total fee should not exceed what is reasonable for the fiduciary services, plus legal fees within the guidelines of said Code" [of Professional Responsibility].
In addition, the Probate Practice Book directs that:
 "[i]n those cases, the attorney should maintain records which clearly distinguish between the professional and nonprofessional services rendered."
The Code of Professional Responsibility[2], in effect when the decedent died, provided that a lawyer's fee shall be reasonable considering the following factors:
1. The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
3. The fee customarily charged in the locality for similar legal services;
4. The amount involved and the results obtained;
5. The time limitations imposed by the client or by the circumstances;
6. The nature and length of the professional relationship, with the client;
7. The experience, reputation, ability of the lawyer or lawyers performing the services; and
8. Whether the fee is fixed or contingent.
The reasonableness of an executor's commission is determined by reviewing the circumstances of the estate and CT Page 3054 services provided under the standards of Connecticut law. The Connecticut Supreme Court established standards to judge the reasonableness of executor's commissions in Hayward v. Plant,119 A. 341 (1923). In that case, the court held that "reasonable" means what is fair in view of the following:
1. The size of the estate;
2. the responsibilities involved;
3. the character of the work required;
4. the special problems and difficulties met in doing the work;
5. the results achieved;
6. the knowledge, skill and judgment required of and used by the executors;
7. the manner and promptitude in which the estate has been settled;
8. the time and service required; and
9. Any other circumstances which may appear in the case and are relevant and material to this determination. Id. at 345.
The appellants challenge Morgan Guaranty's fee as being unreasonable. To succeed, the appellants first must establish that the fee set by the will does not control and further that, applying the Hayward principles set forth above, the fee is excessive. To succeed in their claim against Mr. Cowell, as attorney and co-executor, the appellants do not have to override the presumption of the will itself, but merely have to establish that his fees were unreasonable.
II FEES OF MORGAN GUARANTY
In her Last Will and Testament (the "will"), Eleanor O. Czapski named Morgan Guaranty a co-executor of her estate. Plaintiff's Exhibit B, Art. 12th. In Article 15th of her will, Mrs. Czapski establishes Morgan Guaranty's commissions as follows:
 I direct that the compensation, to which my corporate Executor and Trustee shall be entitled, shall be determined as follows:
CT Page 3055
 As Executor and Trustee, Morgan Guaranty Trust Company of New York shall be entitled to compensation at the rates and in the manner customarily allowed from time to time to a sole corporate fiduciary by the Court in which this Will is admitted to probate . .
 In no event shall the compensation allowed Morgan Guaranty Trust Company of New York be less than that to which it would be entitled for acting in a comparable capacity under the laws of the State of New York in effect from time to time. (emphasis supplied).
Plaintiff's Exhibit B, Art. 15th.
For many years New York has had a statutory schedule of commissions payable to executors acting in New York. N.Y. Surr. Ct. Proc. Act, 2307 (McKinney (1982)). As required by Mrs. Czapski's will, the co-executor's commission of Morgan Guaranty charged in the account is computed in the manner prescribed by the New York statute.
There is no claim that the Will is unclear, or that the computation is incorrectly made. Rather, the appellants contend that it is the responsibility of this court as an appellate court of probate to fix the amount of Morgan Guaranty's executor's commissions on a quantum meruit basis.
Where the governing instrument — whether a will or a trust — stipulates either the amount of the fee or the method of its calculation, that provision is held binding on the executor or trustee as a matter of contract when the fiduciary accepts the appointment under the instrument. Such provision is equally binding on the beneficiaries and the administering court either as a matter of contract or as a matter of testamentary intent, or both. See 34 C.J.S. Executors Administrators 869 and 872 (1942) and Bogert, Trusts Trustees, 976, et seq. (2d e.d 1983). For a discussion of some of the early decisions on this subject, see Comment, Executors and Administrators — Effect of Testamentary Provisions on Executors' Fees, 38 Mich. L. Rev. 381 (1940); Comment, Compensation of Fiduciaries, 42 Yale L.J. 771 (1933). The recent cases follow.
The Connecticut Supreme Court has recognized that a testator may specify the executor's compensation in the will, and that the testator's intent is to be followed where it can be determined from the will. See e.g. DiSesa v. Hickey, 160 Conn. 250,264-266 (1971) (wherein the court held that because the will provided for the executor to get 15% of the "gross inventory" of the estate, a term not defined in caselaw, or statute, and the trial court arbitrarily included the trust in CT Page 3056 this definition, but excluded the joint property, the testator's unintelligible direction should be disregarded and the compensation determined on a quantum meruit basis to result in a reasonable fee); Baydrop v. Second National Bank, 120 Conn. 322, 326 (1935) (holding that where the instrument creating the trust fixes compensation for the trustee, it cannot be enhanced); and Kaiser v. Second National Bank of New Haven, 123 Conn. 248, 252 (1937) (holding that additional compensation could be awarded, but only where there were extraordinary services "not in the contemplation of the parties.") (Emphasis added). Thus, unless the executor has failed to complete his duties or committed a breach of trust, the weight of authority directs that the executor trustee should be compensated in accordance with the intent of the testator as fixed by the instrument in issue.
Other jurisdictions appear to be in accord. In re Estate of Loutsion, 496 A.2d 1205, (Pa. super. 1985), the intermediate Appellate Court reversed the trial courts decision to award a bank a commission for his services as corporate executor substantially lower than had it been computed in accordance with the will. That court's opinion supports the notion that the expressed will provision is binding and elaborates by stating:
 [T]he issue of reasonableness does not arise unless the will is silent as to the amount of compensation to be paid the executor. Where the testator has made an express provision for the amount of the executor's compensation and the executor accepts his appointment under the will, that provision is binding on all parties, both the executors themselves and the state, . . . unless some misconduct or mismanagement warrants a reduction of the commission by surcharge. This is in accord with the fundamental principle of the law of wills that where a court can with reasonable certainty ascertain the intent of a testator through examination of the will itself, resort to consideration of matters external to the document is improper.
Id. at 1206.
Similarly, in In re Estate of Bodges, 279 P.2d 61
(Cal.App. 1985), the Appellate Court reversed the trial court's decision to limit the trustee fees to "just and reasonable compensation for services actually rendered." Where the provisions of the instrument are clear, "the Probate Court and all interested parties are barred thereby and the direction of the testator provides the law of the case." Id. at 66.
The Supreme Court of New Hampshire has held that a testatrix domiciled in New Hampshire could provide in her will CT Page 3057 that her two individual executors should receive the full commissions provided under New York statute. In re Estate of Quirin, 119 N.H. 206, 399 A.2d 978 (1979). The probate court refused to allow the executors' account on the ground that the fiduciaries of a New Hampshire domiciliary could not charge for their services in accordance with the New York law. The Supreme Court of New Hampshire rejected any notion that this was a question of choice of law. It reversed the probate court, stating:
 "This court has held that a [testatrix's] intent is the sovereign guide to interpreting her will. . . . In ascertaining this intent, the court should examine the totality of the circumstances and place itself in the position of the [testatrix.]" Royce v. Estate of Denby, 117 N.H. 893, 897, 379 A.2d 1256, 1259 (1977) (citation omitted).
 No facts, circumstances, or policies can justify the probate court's denial of the petition for approval of the final account. We hold that to do so is clearly an abuse of judicial discretion and we order the granting of the petition and approval of the account as filed. (emphasis supplied).
In Patterson v. Harris, 267 Ark. 1072, 593 S.W.2d 489
(Ark.Ct.App. 1980), the testatrix provided that her executor should receive a fee of ten percent of the total gross estate. Over the objections of the beneficiaries, the trial court and the appellate court held that the issue was a matter on which testamentary intent was controlling and that the executor was entitled to 10% of the gross estate regardless of whether the court regarded the fee as reasonable, just or equitable. Id.
Several other cases from other jurisdictions express similar sentiment and despite their age, their holdings continue to be good law today. In America Jewish Joint Distribution Commission v. Eisenberg, 194 Md. 193, 70 A.2d 40 (Md.Ct.App. 1949), the Maryland Court of Appeals held that a testamentary provision for executor's commission be given effect, notwithstanding a Maryland statute that specifically limits executor's commissions. Noting that the will provided greater compensation than permitted by Maryland statute, the Eisenberg Court held that a testator has a right to leave his property as he sees fit, and hence the statute does not prevent him from leaving to his executor more than the statutory commission." Id. A.2d at 42. And in Arkansas, the court saw no reason to interfere with a testator when he wants to fix the amount of compensation due an executor of his estate. CT Page 3058
 The relation of testator and executor, created by a will, is one of great trust and confidence, and we see no reason why a testator should not only be allowed to name his executor, but should not also be allowed to fix his compensation. At common law an executor was not allowed compensation, but that rule has been changed in this state by statute. [Arkansas law] provides the maximum compensation to be allowed administrators and executors, but this section must be construed to apply when the will has not otherwise provided. Certainly, if the will fixed a greater compensation than that allowed by statute, it would not be contended that only the statutory commissions could be allowed. If the executor named in the will is not willing to serve for the compensation fixed by the will, he is not required to serve, but may decline to do so.
Gordon v. Greening, 182 S.W. 272 (Ark. 1916).
The appellants cite only two cases which instruct this court that it may disregard the instrument in question and thereby restrict the fiduciary's compensation to the amount the court determines to be reasonable where the amount fixed by the will is offensive to public policy. Close examination, however, of the citations relied upon by the probate court in Estate of E., 1 Conn. Prob. L.J. 68 (Prob. Ct. Dist. of Essex) (1985), which opinion was then followed by the probate court in Matter of Anne M. West Trust, 3 Prob. L.J. 287 (Prob. Ct. Dist. of Westport) (1987), discuss the testator's intention when pit against such legal principles as the Rule in Shelly's Case or the Rule Against Perpetuties. Compensation of fiduciaries is not an issue addressed in the few authorities cited by these probate court opinions. Indeed, neither probate court clearly explains why deference to testamentary intent is so offensive that it should feel compelled to disregard it.
According to overwhelming and well reasoned authority, this court believes it would be more offensive to public policy to undermine the testamentary intent very clearly expressed in this particular will. Moreover, because corporate fiduciaries accept the role of executor when they are satisfied with the fee to be provided, as set forth in the will, it would be, once again, offensive to interfere with this quasi contractual relationship.
 A testator may provide in his will the amount of compensation to be paid for services to be performed for his estate after his death, by an executor, CT Page 3059 trustee, attorney, or the like.
 . . .One is entitled to the compensation provided by will if he performs the required services within a reasonable time.
 One accepting the provisions of a will resulting in performance of services is bound by the will and cannot recover a larger compensation than is fixed therein, even though a greater compensation for such service is allowed by statute. On the other hand, if he performs the specified service, he is entitled to recover the compensation specified by will, even though it is greater than the value of the service or the rate fixed by statute. (emphasis supplied.)
6 Page, The Law of Wills, 57.14, at 358-60 (Bowe-Parker rev. 1962).
Moreover, were this court to deviate from normal practice and disregard the will and the testator's clear intent in favor of setting a reduced compensation figure, experienced foreign banks would surely respond by refusing to take on the responsibilities of a corporate fiduciary in Connecticut. When individuals seek the services of an executor, they are entitled to select the executor/fiduciary they want if they are willing to agree to the terms. Here, Mrs. Czapski wanted the same entity that had been managing her portfolio for years before her death to continue to handle her affairs after her death for the benefit of those people who were to inherit. Nothing about this situation compels this court to disregard her well expressed desires. Nor is the clearly drafted will a point of confusion which allows this court to question the testator's intent. The language is clear and speaks for itself without any need for interpretation.
However, even were this court to head into unfamiliar waters, the record is devoid of any evidence which would form the conclusion that Morgan Guaranty's fees were in conflict with "an established rule of law or public policy." As even the plaintiff's expert testified, corporate fiduciaries could expect to be paid 2-3% of the estate, depending largely upon the size of the estate and its complexity[3]. Only, were the appellants able to prove that Morgan did not perform its duties as an executor, or that its fees were so outrageous as to divagate from any reasonable standard of measure, could this court question whether a public policy had been offended.
Finally, and purely as a precautionary measure, a review of the services provided by Morgan Guaranty according to the CT Page 3060 criteria of Hayward v. Plant, would lead to the same conclusion that Morgan Guaranty was entitled to its fees.
Mrs. Czapski's estate was a sizeable one. Valued at approximately four million dollars, well over $2.5 million was in securities and investments while the bulk of the remainder was in the estate's problematic real property. Each of the co-executors was fully responsible for the administration, management and liquidation of the assets of this large estate, and, as the testimony illustrated, the character of the work required of Morgan Guaranty to administer this estate and liquidate its assets was difficult, complex and intensive.
As Mrs. Shea, Morgan Guaranty Executive, testified, the investment portfolio of the estate was diverse, consisting of 29 issues of common stock and 9 issues of municipal bonds. Management of that investment portfolio required the expertise, diligence and attention for which Morgan Guaranty has earned its reputation. As Aram Tellalian ("Appellants' Experts") readily acknowledged, Morgan Guaranty was well situated to handle the estate's portfolio because it is a "highly sophisticated, top-of-the-line corporate fiduciary" with a trust and investment division "going full blast at all times."
In addition to ordinary interest income, Morgan realized gains on the redemption of bonds and sale of stock in excess of $300,000, or more than 10% of the portfolio's value. The print-outs of these transactions were reviewed by the co-executors on a monthly basis and quarterly reviews were performed by Morgan Guaranty's Trust and Investment department.
As the trial testimony indicated, the Morgan Guaranty team, in particular its Real Estate division, was involved in the day-to-day management and marketing of the real property. Mrs. Shea, Carter Short and Dick Bartels worked with the real estate brokers and the co-executor to develop an effective marketing plan for the house. Dick Bartels, in particular worked with Mrs. Richmond and Attorney Cowell for approximately two years to coordinate the care, safe keeping and maintenance of the house pending its sale. His involvement in the management of this property is documented in his progress sheets. Defendant's Exhibit 11.
Morgan Guaranty participated directly in the tax planning for the estate. It prepared the estate's income tax filings and coordinated with its co-executor in the filing of the succession tax returns. Morgan Guaranty's tax specialists, Mrs. Shea and Richard Bonfiglio, participated in all decisions relating to the tax matters of the estate. CT Page 3061
In its management of this estate, Morgan Guaranty was not "aloof" and did not hide from the beneficiaries or their parents behind "committees." Mrs. Shea testified to having had over 25 personal conversations with Mrs. Czapski's heirs. Mrs. Shea also stated that other members of Morgan Guaranty team, including Ellen Farrell and Diane O'Keefe, had similar communications. In addition, Morgan Guaranty had numerous communications with the beneficiaries on subjects ranging from tax planning and investment information to the disposition of various items of Mrs. Czapski's personal property.
The summary submitted by Mrs. Shea illustrates that a great deal or time and effort was expended by Morgan Guaranty in the administration of this estate. Defendant's Exhibit 12. Morgan Guaranty performed its duties in a professional manner. In fact, the appellants have repeatedly admitted that the services provided by Morgan with regard to Mrs. Czapski's Estate were indeed sizeable. In the Pretrial Brief, filed by appellants, they stated:
 . . . virtually all of the administrative details were being handled by co-executor Morgan Guaranty. (Appellants' Pretrial Brief at 6).
 . . . co-executor Morgan Guaranty handled most of the administrative details of the estate after her death. (Appellants' Pretrial Brief at 9).
 Most of the work was performed by co-executor Morgan Guaranty . . . . (Appellants' Pretrial Brief at 13).
 As to the time and service required, Morgan Guaranty apparently handled most of the administrative details of the estate. (Appellants' Pretrial Brief at 16).
Although the appellants in their post trial brief, took issue with the creation of 8 trusts and argued that the estate "did not present any unusual problems or difficulties", (Appellants' Post Trial Brief at p. 7), there is no claim by the appellants that a less than professional job was performed by Morgan Guaranty.
Consequently, Morgan Guaranty is deserving of the fee as set forth in the interim accounting.
III Fees of Attorney Cowell
The amount of Cowell's compensation as co-executor and that of his firm as attorney is within the discretion of the court, which discretion must be exercised according to the rules CT Page 3062 and practices that have been established in Connecticut. Bridgeport City Trust Co. v. First National Bank Trust Company of Bridgeport, 124 Conn. 472 (1938).
An attorney is entitled to receive what he reasonably deserves for his services taking into account, among other things, fees usually received by counsel for similar matters, the practice and experience of the attorney, and his standing in the legal profession. Phelps v. Hunt, 40 Conn. 97 (1973); Slade v. Harris, 105 Conn. 437 (1927); Stoddard v. Sagal, 86 Conn. 346
(1912); Hoenig v. Lubertkin, 137 Conn. 516 (1951).
In Hayward v. Plant, 98 Conn. 374 (1923), the Supreme Court established certain factors to be applied in determining the reasonableness of an executor's fee. Similarly, the Code of Professional Responsibility has set forth factors to be considered in determining the reasonableness or an attorney's fee, which are similar to the Hayward v. Plant criteria.
As testified to by both the appellants' expert and the appellees' expert, the size of the estate is an important factor in determining the reasonableness of the fee. Sometimes, a large estate may be more complex than a small one and may thus require skill and expertise on the part of the executor and attorney. There may also be a greater level of responsibility due to the level of inquiry by beneficiaries. The appellants, who were represented by counsel within months of the decedent's death, were looking over the shoulder of both co-executors and Cowell's law firm during the entire administration of this estate. Plaintiff's Exhibits, Q, R, S, and Defendant's Exhibit 15.
Although Cowell and the co-executor, Morgan Guaranty Trust Company, were equally subject to fiduciary liability in connection with all aspects of the estate administration, Attorney Cowell played the greatest role in the taking possession of and selling a large piece of waterfront property including its contents, the filing of all Probate documents, the federal estate tax return, and the succession tax returns. (See Defendant's Exhibit 2 at page 5).
The sale of real estate presented certain difficulties which were in keeping with the location of the property in Wilson Point, its physical condition, and the particular characteristics of the adjacent waterfront. The development of this property was subject to Deed restrictions imposed by the Wilson Point Association. During the marketing of this property, it became apparent that the property should be subdivided so as to attract not only individuals interested in a personal residence, but also developers who could refurbish the existing CT Page 3063 dwelling, and either sell off the subdivided lots, or build homes thereon for resale. The key to any successful subdivision so as the approval of the Wilson Point Association, and those property owners within close proximity to the Czapski property. Cowell undertook successfully to obtain the approval of the Association and the twenty-two individual owners. He also participated in the market evaluation of the property as well as the selection of the listing broker. Along this same line, Cowell arranged for the security service at the residence.
As testified to by realtor Pat Richmond, Cowell was also in contact with her office, the listing broker, on numerous occasions in connection with the marketing and sale of this property, especially with respect to the subdivision of the property. In this regard, he attended meetings in New York to discuss the marketing and subdivision of the property, and the reduction in sales price.
Attorney Cowell also participated in the selection of the appraiser for the personal property, and worked along with this appraiser and the co-executor in valuing the personal property and in distributing items thereof to the decedent's family members. Cowell also dealt directly in the planning and auction of the decedent's remaining personal property in May, 1984. Additionally, Cowell was involved in the settling of the decedent's income trust with the U.S. Trust Company and arranged for the transfer of the interest income to Morgan Guaranty Trust Company. Cowell prepared the Federal Estate Tax Return and did so properly as evidenced by the allowance of the IRS of all deductions and credits sought by the estate.
This court does not find fault with the three specific items mentioned by the appellants[4]:
 1. The trip to Hartford for the Secretary of State to be appointed as agent for Morgan Guaranty;
 2. the value of $1,500,000 placed on the residence at Wilson Point; and
3. the establishment of eight separate trusts;
Nevertheless, and despite satisfactory results in the administration of the estate, Mr. Cowell's combined fees are excessive. He failed to separate his two roles in his time records and therefore, it becomes very difficult to treat the functions, and the concomitant fees separately.
If the court computed the compensation strictly on an hourly rate charged by Mr. Cowell in 1982 for his legal CT Page 3064 services, the total for all 733.37 hours at $145 per hour would be $106,339. That hourly rate was not a negligible sum in 1982 for services in either capacity.
Mr. Cowell testified that he set the fees for each of his two functions based on a percentage basis and based on what he believed others were charging at the time for similar size estates. His assessment however, was very vague because he never specifically stated what that percentage was or what specific percentage served as his source of reference[5]. He believed he did a competent job for a long standing, and sometimes difficult client. A review of all the work however, shows that the only less than straight forward task concerned the realty, which, as the time sheets demonstrate, took up the bulk of Mr. Cowell's endeavors. The court does not criticize the time or effort put into the subdivision application; on the contrary; the court believes Mr. Cowell's personal touch probably made the difference in achieving approval for the subdivision. Nevertheless, the hours he spent do not merit the fees he is seeking to collect.
Mr. Cowell seems to believe that because he was able to get the IRS to accept his fees which resulted in a net cost of $77,000 to the estate, that the beneficiaries should be grateful or at the very least, compliant. The issue of unreasonableness should not be evaluated on who pays the fee — the beneficiaries or the government. Rather, it is to be determined by the amount of work expended, the quality of the results, the time it took from the attorney's other practice, etc.
In the battle of the experts, the court found much of what Mr. Tellalian said convincing. It would have been more economical to hire an accountant for $1,000.00 to prepare the 706 Forms than to prepare them himself over 40 hours. Mr. Tellalian testified that where an attorney also serves as a co-executor, there is a rule of thumb that the total for all 3 fees should be 5%; 2 1/2% for the attorney/co-executor and 2 1/2% for the corporate fiduciary. Mr. Tellalian also testified that where the attorney brings in a corporate fiduciary, the individual co-executor is left with ministerial duties. While Connecticut law says two executors can serve and receive greater compensation than were only one to serve, the fee for each should not be the same as if he were acting alone. At another time, Mr. Tellalian testified that where three entities are to be compensated, as here, the corporate fiduciary should receive 2%, the individual should receive 1% as co-executor and 2% as an attorney. This would result in the fee of $120,000 to Mr. Cowell in both his capacities[6]. Although in another segment of his testimony Mr. Tellalian suggested that Mr. Cowell's fees CT Page 3065 should constitute 2 1/2% of the estate, this would have been exclusive of the subdivision/zoning work which Mr. Tellalian thought should have been turned over to a zoning attorney. Certainly the appellants must recognize that someone would have to be compensated.
It is the opinion of this court that Mr. Cowell be compensated in the amount of $120,000 for services as co-executor and attorney. Therefore, the interim account as it relates to Mr. Cowell is not approved.
KATZ, JUDGE